## First National Bank of Allentown *versus* Williams.

100    123
41SC²396

1. A., a business man, accustomed to' financial transactions, called upon B., the president of a bank, and inquired of him whether the bank paid interest on deposits. B. replied, "No, we cannot do that; we will give you a certificate that will." A. then gave B. a sum of money and B. gave him an interest-bearing certificate of deposit in the banking house of B. & Co., of which firm B. was a member. A. then expressed some surprise that the certificate of deposit was not in the bank. B. assured him that it was all the same thing; that B. & Co. owned the bank, and that he could get his money at the bank whenever he wanted it. B. & Co. actually held a majority of the bank stock, and A., being satisfied with B.'s statement, accepted the certificate. The firm of B. & Co. afterwards became insolvent. In an action by A. against the bank to recover the amount of the deposit, *Held*, that there was no evidence of a contract of deposit between the plaintiff and the bank, nor any evidence from which it could be inferred that the plaintiff had been misled into believing that there was such a contract, and that therefore the plaintiff was not entitled to recover.

2. Steckel *v*. The Bank, 12 Norris 376, and Ziegler *v*. The Bank, 12 Norris 393, distinguished.

March 10th 1882.    Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas of *Lehigh county :* Of January Term 1882, No. 345.

Assumpsit, by David Williams against the First National Bank of Allentown, to recover the amount of a deposit of $6000 made by the plaintiff, as alleged, with the bank defendant, with interest thereon. Pleas, non assumpsit, payment with leave, &c.

On the trial, before Hagenman, P. J., of the 23d judicial district, the facts appeared to be as follows : For some time prior to 1873 the plaintiff had kept a deposit account with the bank defendant. At times his balances on deposit were large. In the latter part of 1873 or early in 1874, he called at the bank and asked the president, William H. Blumer, "whether he would allow me interest on my running account ; said he, 'No, we cannot do that ; we will give you a certificate that will bear six per cent. interest and we can give you your money at any time you want it ;' and he made out a certificate and handed it over to me ; I looked at it, and said I : ' What is this ? This is Wm. H. Blumer & Co.' Said he : ' It is all the same thing. We own the bank ourselves and you will get your money in the First National Bank at any time you want it.' He called me inside, and showed me the statement of the First National Bank, to satisfy me they were good—the statement he had pre-

sented to the government to show the standing of the bank. He then told me they owned nearly all the bank. I then took the certificate. In the first place I deposited $4000, afterwards a thousand dollars at a time. On December 23d 1875, I called with the certificates, and received the interest due. Mr. Blumer said that I had better take them all in one; I got this certificate and turned the others into this one."

This certificate, in the following form, was put in evidence by the plaintiff:

BANKING HOUSE OF WM. H. BLUMER & Co.

No. 944.—Certificate of deposit.

ALLENTOWN, PA., Dec. 23d 1875.

David Williams has deposited six thousand . . . . . . . . 100 Dollars, payable to order of self,        after date, with 6 per cent. interest per annum, on return of this certificate.

WM. H. BLUMER & Co.

Wm. H. Blumer, J. M. Line, Wm. Kern.

It appeared that the firm of Wm. H. Blumer & Co. transacted a banking business and that the members of that firm held, in 1875 and 1876, 1560 shares out of the total issue of 2500 shares of the capital stock of the First National Bank of Allentown.

In March, 1877, the said bank became embarrassed, and the plaintiff demanded payment of the certificate, at the bank, from Wm. H. Blumer, president, who did not pay it but said, " Your money is all safe; you will get every dollar; the First National Bank is all right." The bank afterwards failed, and Wm. H. Blumer & Co. also suspended payment, and were adjudicated bankrupts. The plaintiff then brought this suit against the bank. Pending this suit, he also presented his claim on the certificate in the bankruptcy proceedings of Wm. H. Blumer & Co., under the advice of counsel that such action would not prejudice his claim against the bank, but if he received anything in the bankruptcy proceedings he could credit it on his claim against the bank. It did not appear, however that he had received any amount from the bankrupt's estate.

The defendant submitted the following points:

1. Under all the evidence in the case the verdict must be for the defendant.

2. No contract relation has been shown between the plaintiff and the corporation defendant.

3. No facts appear in evidence from which the law will imply a promise to pay by the defendant.

4. The president of a national bank is but the executive agent of the board of directors, and is not by virtue of his office

[First Nat. Bank of Allentown v. Williams.]

an executive agent of the corporation; as such he has no authority to make contracts binding on the corporation without directorial sanction or authority.

5. The certificate accepted by the plaintiff in 1873 or 1874 from Wm. H. Blumer was presumably a contract between the firm of Blumer & Co. and the plaintiff; and before the plaintiff could recover he must show that he made the contract not with that firm but with the bank.

6. According to the testimony of the plaintiff he made no deposit in 1875 when he received the certificate of Blumer & Co. produced on the trial, but took it for those certificates previously held by him; from this state of facts no liability to pay arises on the part of the defendant.

7. It is admitted that Williams proved his claim as represented by the certificate in evidence, before the register in bankruptcy in the estate of Wm. H. Blumer & Co. and claimed to hold a provable demand in said estate; this is conclusive on the plaintiff and he cannot recover in this suit.

The court reserved these points, and charged the jury, inter alia, as follows:

" In regard to the points which have been submitted upon the part of the defendant, whatever hesitation the court may have in regard to the law as raised by those points, if it is necessary those points will be considered at another time, and they are reserved for the present.

"Was that a contract between Williams and the bank, or was it a deposit placed there, for which he was willing to accept the certificate of Wm. H. Blumer & Co., to be paid in that bank, and not by that bank, at any time when he saw proper to come there and demand his money.

"We simply submit to you, was there a contract made by Williams and the First National Bank? There is no pretence that it was made with the cashier of that bank or the teller. It was made with Wm. H. Blumer, who was the president of the bank, and how large an interest he may have had with the firm of Wm. H. Blumer & Co., whether he was principally or mainly that firm, makes no difference in this case. Was it a contract with the First National Bank, that the deposit was to be paid by the bank, or was it a deposit put there after Williams had been shown the condition of the bank by Mr. Blumer, and how largely they held its stock, with the understanding that he might come there and get his money at that bank, or in that bank, whenever he saw proper to demand it, and not to be paid by the bank itself? As you find that fact so your verdict will be."

Verdict for plaintiff for $7,791. The court discharged a motion to enter judgment for defendant non obstante veredicto,

and for a new trial, and entered judgment on the verdict for the plaintiff. The defendant thereupon took this writ of error, assigning for error, inter alia, the omission of the court to answer its points, and the portion of the charge above quoted.

*Edward Harvey*, for the plaintiff in error.

*Evan Holben* (with him *D. D. Roper*), for the defendant in error.—There was ample evidence to warrant the submission to the jury of the question whether the contract was with the bank. The transaction was with the president of the bank, in the banking house, and when this officer said, "*we* can give you a certificate," &c., the plaintiff understood he was speaking for the bank on a matter within the scope of his authority. That the president had the power to bind the bank is ruled in Steckel *v.* Bank, 12 Norris 376. Even if the receipt of money for the bank was not within the scope of his agency, a corporation cannot in such case set up the fraud of its own officers in answer to a demand for payment : Ziegler *v.* Bank, 12 Norris 393 ; Resh *v.* Bank, 9 W. N. C. 21.

Mr. Justice PAXSON delivered the opinion of the court, March 20th 1882.

The learned judge who tried this cause below was evidently of the impression that it came within the ruling of Steckel *v.* Bank, 12 Norris 376, and Ziegler *v.* The Bank, Ibid. 393. There is, however, a marked distinction between the cases. In those cited there was a positive assertion on the part of the bank officers that the certificates in question were the certificates of the bank, and this assertion was made under circumstances which rendered it at least probable the parties were misled by it. We therefore held there was a question of fraud which ought to have been submitted to the jury.

In the case in hand it is evident from the testimony of the plaintiff below that he knew he was getting the certificate of Blumer and Co. and not of the bank. In the first place he was distinctly told the bank would not pay interest, but that he could have a certificate bearing six per cent. interest. When it was handed him he looked at it and said, "What is this? This is Wm. H. Blumer & Co.," to which the president of the bank replied, "It is all the same thing ; we own the bank ourselves, and you will get your money in the First National Bank at any time you want it." It further appeared that Mr. Blumer showed him the bank statement, and then qualified his remark as to the ownership by saying that his firm owned nearly all the bank. This last statement, while not literally true, was

[Olmsted *v.* Gere.]

substantially so.  It was in evidence that the firm of Wm. H. Blumer & Co. owned 1,560 shares of the 2,500 shares composing the capital of the bank.

There was no evidence that the plaintiff was told his certificate was the certificate of the bank.  The statement of Blumer that " it was all the same thing " could not have misled him, for the reason that it was qualified and explained by the remark that they, the firm of Blumer & Co., owned nearly all the bank.  The obvious inference from the remark is, not that the certificate was issued by the bank, but that it was equally good. It is difficult to see anything in this interview that could have deceived a man of even ordinary intelligence.  The plaintiff was a business man, accustomed to large dealings with the bank, and therefore less liable to be deceived.

We fail to see any evidence of a contract with the bank. It was therefore error to submit this question to the jury.

Judgment reversed.