GUARANTY STATE BANK OF CARTHAGE v. HULL.

(Court of Civil Appeals of Texas. Texarkana. Jan. 29, 1914. On Rehearing, March 19, 1914.)

1. APPEAL AND ERROR (§ 747*)—ASSIGNMENT OF CROSS-ERROR—FILING.

A cross-assignment of error which was not filed with the clerk of the trial court, as required by rule 101 for the district and county courts (159 S. W. xi), will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3053–3056; Dec. Dig. § 747.*]

On Rehearing.

2. BANKS AND BANKING (§ 118*)—AUTHORITY OF PRESIDENT—SUFFICIENCY OF EVIDENCE.

In an action by a bank upon an overdraft, evidence *held* insufficient to warrant a finding that the president of the bank to whom the defendant had delivered cotton in payment of the overdraft was the active president; there being testimony that he was merely an honorary president.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1726–1738; Dec. Dig. § 118.*]

3. BANKS AND BANKING (§ 102*)—OFFICERS—AUTHORITY TO MAKE COLLECTIONS.

One who delivered cotton to the honorary president of a bank, knowing that the latter had no authority to deal on behalf of the bank, under an agreement by the latter to apply the pro-

ceeds to the payment of an overdraft at the bank, cannot hold the bank on a failure so to apply the proceeds.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 239–243; Dec. Dig. § 102.*]

Appeal from District Court, Panola County; W. C. Buford, Judge.

Action against the Guaranty State Bank of Carthage against E. A. Hull. Judgment for the defendant, and plaintiff appeals. Reversed and remanded on rehearing.

The appellant bank sued the appellee for $3,042.50, being the alleged balance due of principal and interest upon authorized overdrafts drawn by appellee and paid by appellant variously from May 1, 1911, to May 15, 1912. The appellee answered by general denial and by averment of his payment to the bank of the debt sued for out of the proceeds arising from the sale of 128 bales of cotton, made for him and the bank through its president, who had authority to collect the debt and receive such payment of the same. Appellee also filed a cross-action for debt against the bank; but, as all such pleading was retired from the case by a demurrer thereto sustained by the court, it is unnecessary to further mention it. By supplemental petition appellant entered demurrer and exceptions to appellee's answer of payment, and answered by general denial and by averment that the alleged cotton transaction was a dealing wholly between R. E. Trabue acting for himself individually and the appellee, and not in furtherance of the business of the bank, and, if undertaken to be made for the bank, was without the authority of its president as such to make in behalf of the bank, and of which the bank had no knowledge and did not ratify and confirm. Appellee replied to the allegations of the supplemental petition by general denial and plea of estoppel. There was a trial to the court without a jury, and judgment was entered for the bank for $658.44, principal and interest, being the difference between the sum sued for and $2,165.81, found by the court to have been paid to the bank by appellee. The facts appear in the ruling upon the assignments.

Brooke & Woolworth, of Carthage, for appellant. F. H. Prendergast and Beard & Davidson, all of Marshall, for appellee.

LEVY, J. (after stating the facts as above). The first assignment, as does the second, predicates error upon the court's overruling certain special exceptions to the appellee's answer. The answer by intendment, and in legal effect, fully and sufficiently, as against the exceptions urged, pleads payment of the debt sued for to the president of the bank as such and having authority to collect the debt and receive for the bank such payment.

The third assignment and those following challenge the credit of $2,165.81 upon the overdraft indebtedness sued on by appellant. It appears from the evidence that by prearrangement appellee drew various overdrafts on, and the same were paid by, appellant bank. And, according to appellee's admission, his indebtedness in March, 1912, to the bank by overdrafts, including interest, of $5,165.81 is correct. On March 18 or 19, 1912, there was placed in the bank to appellee's credit, through R. E. Trabue, president of the bank, the sum of $3,000 cash, which appellant bank admits was used and applied by it at the time in reduction of the amount of the overdraft indebtedness. And the point of difference in this suit between the parties is concerning the further amount of payment on the overdrafts claimed to have been made by appellee on March 18 or 19, 1912. The court made the finding of fact, appearing in the record, that there was owing the bank $5,165.81 on overdrafts by appellee, and that R. E. Trabue, while president of the bank, collected such amount in cotton from appellee, and agreed to give him credit at the bank for such amount so collected, and that Trabue did give him credit for $3,000 of this amount, but failed to give him credit for the other $2,165.81, as should have been done. In order to determine whether the findings of the court are warranted by the evidence, it is undertaken to state what we conclude are the salient facts bearing upon the issue, and it would serve no purpose to make further statement from the record. It appears that R. E. Trabue was the active president of the appellant bank, and had been for several years, and continued to be until June 1, 1912, when he sold his stock and resigned the presidency. He was also a merchant, and in his merchandise business bought cotton generally from the public. Appellee says he owed Trabue a store account of $325, less a credit of $250. Trabue owed appellee a personal indebtedness of something over $12,000, satisfactorily arranged between them. At the time the overdraft indebtedness to the bank was due and owing, the appellee was the owner of 128 bales of cotton raised on his farm, and of the aggregate weight, according to the weigher's receipts, of 63,573 pounds. On March 18 or 19, 1912, R. E. Trabue came to appellee's farm with the purpose of purchasing the cotton. According to the testimony of appellee, a sale of the cotton was effectuated upon the occasion, at the agreed price of 11 cents a pound upon the total weight mentioned, aggregating in amount $6,993.03, under the agreed terms and conditions that Mr. Trabue would deduct from the purchase price the sum of $5,165.81, and take and receive this amount and credit it in the appellant bank to his overdraft indebtedness. Appellee particularly says that Mr. Trabue put down on a piece of paper the weights of the cotton and the agreed price, and arrived at the total price of the cotton, and then

"gave me a little book" which "showed $5,-165.81 overdraft," and then from the purchase price of the cotton deducted the $5,-165.81, together with the account "that I would be owing him in the store." The inference from the evidence is that the "little book" which Mr. Trabue handed appellee was the passbook of appellee at the bank. Trabue received and took the cotton under this agreement. Appellee further says that he was dealing at the time, in respect to the cotton, with R. E. Trabue as president of the bank, and with the purpose and intention of paying off the overdrafts to the bank, and, "but for the fact that Mr. Trabue was president of the bank, or an officer of the bank, I would not have sold him the cotton on time. I never sold anybody cotton on time except Trabue for the bank. I wouldn't have let him had that cotton except he promised that he would put that money to my credit in the bank. Except that I was dealing with him as president of the bank, and that he was to put the money to my credit, I wouldn't have let him had the cotton." It appears in this connection that appellee and Trabue at the time of the cotton transaction also undertook to adjust the personal indebtedness of Trabue, amounting to some $12,000, by having Trabue execute a note for about $14,000, which amount consisted of the $12,000, and interest thereon, and the difference between $5,165.81 deducted from the cotton and the total price agreed upon for the 128 bales of cotton. Trabue secured this note with two policies of life insurance. After receiving the 128 bales of cotton, Trabue reduced it to money, and placed only $3,000 of the purchase price to appellee's credit in the bank in reduction of the overdrafts. After ascertaining that Mr. Trabue had only placed $3,000 to his credit, the appellee went to the bank and informed Mr. Wooten, an officer of the bank, and Mr. Biggs, the cashier, concerning the 128 bales of cotton transaction with Trabue, and insisted that he had thus paid to the bank the overdrafts with the cotton, and that credit in full should be given him. The cashier admits that appellee came to the bank and stated the facts and insisted on having paid the overdraft. Mr. Trabue testified for the bank, admitting that he had taken and received the 128 bales of cotton from appellee and reduced them to cash, and that the weight and price stated by appellee was correct, and that he and appellee agreed to deduct and did deduct from the purchase price payable to him the amount of $5,165.81, and that appellee "asked me to pay it to the bank for him, and I agreed to pay it to the bank, and I agreed to put it in the bank, and I only put $3,000 in the bank for him." And the only difference between the testimony of Mr. Trabue and appellee in relation to the 128 bales of cotton and the agreements and understanding at the time concerning the same was that Mr. Trabue asserted that he was acting in his individual capacity, and not as president of the bank for the bank.

It is not believed that from the record this court would be warranted in setting aside the findings of fact made by the court, as being without any evidence to support the same. The conduct of appellee and Mr. Trabue in relation to their dealing about the 128 bales of cotton makes it quite evident that appellee was surrendering his cotton, and Mr. Trabue was taking and receiving the same, with the sole intention and purpose of using and applying the bulk of the proceeds arising from the sale of the cotton to pay and satisfy the overdraft indebtedness to the bank, which was then, as known to both parties, due and payable. And, if force be given to the admission of Mr. Trabue, as must be done, that in the deal about the cotton it was agreed to deduct, and there was deducted at the time, the amount of $5,165.81 from the agreed price therefor of $6,993.03, in order "to put in the bank" and "to pay it to the bank" for him, there would be supported the conclusion, as made by the court, that Mr. Trabue was undertaking, in his capacity as president, to collect and receive payment for the bank on the entire overdraft indebtedness to the bank. Mr. Trabue at the time had, according to the inference from the record, the appellee's passbook showing his indebtedness to the bank, and in the deal for the cotton used the statement thereon for deducting from the agreed price the bank's debt, and agreed to take that amount and put it, as testified to by appellee, to appellee's "credit at the bank." Such state of facts, in connection with the further fact that Mr. Trabue did, as he admits, put $3,000 of the amount to appellee's credit on the debt at the bank, makes inconsistent any intention and purpose on Mr. Trabue's part of not acting officially for the bank. Going to appellee's farm to deal about his cotton, armed with appellee's passbook, and dealing expressly about the bank's debt, would tend to show the purpose of acting officially for the bank. And agreement to give "credit at the bank" on a debt involves the intention and purpose of acting as an officer of the bank; for only an officer would be authorized to make entries on the books of the bank. Taking the court's findings as the facts, as we do, it would follow that the credit allowed appellee by the court was properly done. In the case of Bank v. Emery, 78 Tex. 598, 15 S. W. 23, after applying the principle that a president of a bank has authority by virtue of his office to collect or compromise debts of the bank, and to take personal property in furtherance of the payment of the debt, it was remarked: "We know of no reason why a national bank corporation may not, for the purpose of collecting a debt due it from a creditor, otherwise unable to pay the debt, have such transactions as occurred

in this case. At any rate, having had them, and received the property, it cannot, while enjoying the fruits of the transaction, be absolved from the performance of its obligations to others assumed by its officers as a means of getting possession of the property, on the plea that its acts were ultra vires." And this principle has been numerously applied in the reported cases. Here, according to the facts found by the court, $3,000 of the amount collected in cotton by appellant's president was used and applied to the debt, and, after knowledge of the facts, such amount was still held and continued as a credit by the bank. Appellant, by enjoying the fruit and benefit of a part of the amount after knowledge of the facts of the transaction, and insisting upon the same, is not in a position to oppose a credit for the balance of the same transaction.

[1] Appellee's cross-assignment does not appear to have been filed with the clerk of the trial court in accordance with rule 101 for district and county courts (159 S. W. xi), and it is therefore not considered.

The judgment is affirmed.

### On Rehearing.

[2] Appellant insists that there was error on the part of this court in concluding that the evidence established the facts that Mr. Trabue had and carried the "passbook of appellee at the bank," and that he was the "active president" of the bank at the time of the alleged cotton dealing in suit. The insistence is entirely correct. The evidence does not warrant the finding in reference to the "passbook." And, going more carefully to the record, we now believe that it does not warrant the finding that Mr. Trabue was the "active president" of the bank at the time. Mr. Ash testified: "I am president of the Guaranty State Bank; I became connected with the bank in that capacity the first part of last year"—which was 1912. If consideration be given to the statement of Mr. Ash, as must be, then both he and Mr. Trabue were presidents of the bank at the same time. There being two presidents of the bank at the time, then the further testimony of Mr. Biggs, the cashier, which is the only evidence bearing upon the capacity of Mr. Trabue, must be observed in respect to Trabue's authority. Mr. Biggs testifies, according to the record, that Mr. Trabue "was honorary president of the bank, but not active in the bank. He had a store over there, and stayed in the store. * * * Mr. Trabue never stayed in the bank; he didn't draw any salary, and performed no services in the bank. Trabue was running his store. He was president of the bank." And to meet this evidence there appears only the statement in the general language of appellee that Mr. Trabue "was president of the bank."

[3] If Mr. Trabue as honorary president did not have the authority to bind the bank, and appellee knew the fact of his want of authority, and, so knowing, nevertheless dealt with him on account of the bank, he could not hold the bank. But whether appellee knew of any want of authority on the part of Mr. Trabue does not satisfactorily or sufficiently appear from the evidence, and we do not undertake, in view of the course this rehearing must take, to make any ruling or finding now in respect thereto. It is a vital question in the case, provided it be found, as a fact, that appellee was undertaking to deal with Trabue as an officer of the bank having authority to make the collection and give the credit in suit. It is not a question in the case, though, if the dealing about the cotton in suit was as a fact purely a personal and private transaction between appellee and Mr. Trabue.

After a thorough reconsideration of all the facts of the record, we are constrained to conclude that there was error in affirming the judgment, and that the judgment should be reversed, and the cause remanded for another trial. As the reversal occurs on the facts of the record, we do not deem it proper to undertake to comment upon or discuss them. The want of authority, as disclosed by the facts in the record, on the part of Mr. Trabue to bind the bank is the prominent ground for the reversal.

In reference to the insistence of appellant that there was no sufficient plea of payment by appellee, it is remarked that the answer might probably be amended at another trial, and it would serve no good purpose now to make further ruling in respect thereto.