## HULL v. GUARANTY STATE BANK OF CARTHAGE. (No. 643.)

(Court of Civil Appeals of Texas. Beaumont. May 31, 1921. Rehearing Denied June 15, 1921.)

1. **Banks and banking** &#9758;228 — **Evidence held to make issue of fact as to whether president was acting for bank.**

In an action by a bank to recover an overdraft, evidence *held* to make an issue of fact as to whether the president of the bank in purchasing defendant's cotton and promising to put the proceeds in the bank to his credit was acting as president of the bank or individually.

2. **Appeal and error** &#9758;1011(1)—**Trial judge's finding on issue of fact not disturbed.**

Where the trial court was compelled to determine an issue of fact upon diametrically opposed evidence and pass upon the veracity of the witnesses, it is the duty of the Court of Civil Appeals to uphold his finding.

3. **Appeal and error** &#9758;747(2)—**Inconsistency of conclusions not considered when only one party has assigned error.**

Whether the court's conclusions of law which were partly favorable to defendant and partly unfavorable were inconsistent as a whole

---

&#9758;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

need not be determined, where there is no cross-assignment of error by plaintiff.

**4. Banks and banking ⟶106—Bank not liable for president's failure to deposit money as agreed individually.**

Where the president of a bank acted as an individual and not as an official of the bank in purchasing defendant's cotton and promising to deposit the proceeds in the bank to his credit, the bank was not responsible to the defendant for his failure to deposit the proceeds to defendant's credit, though he deposited them to his own credit; it not appearing that any of the other officers knew anything about the nature of the transaction until long afterwards.

Appeal from District Court, Panola County; Chas. L. Brachfield, Judge.

Suit by the Guaranty State Bank of Carthage against E. A. Hull. From a judgment for plaintiff, defendant appeals. Affirmed.

Garrison, Pollard, Morris & Berry, of Houston, and H. N. Nelson, of Carthage, for appellant.

P. P. Long, R. W. Priest, and Woolworth & Duran, all of Carthage, and Edwin Lacy, of Longview, for appellee.

HIGHTOWER, C. J. The appellee, the Guaranty State Bank of Carthage, Panola County, Tex., a banking corporation organized under the laws of this state, filed this suit against appellant, Hull, in the district court of Panola county, claiming that appellant, a customer of the bank, had overdrawn his account in the bank to the extent of $3,042.50, and that on account of such overdraft appellant was indebted to appellee in said sum, and judgment was prayed against appellant for that amount.

Appellant, after interposing a general demurrer and general denial, alleged specially that on and prior to the 18th day of March, 1912, one R. E. Trabue was the acting president of said bank, and that as such president had control and authority over, and the general management of, its business affairs, with authority to make loans, accept and receive deposits, and collect indebtedness due said bank; that for several years prior to said 18th day of March appellant had various and sundry transactions with Trabue in his capacity as president of the bank, wherein appellant had sold and delivered to Trabue, in his capacity as president of the bank, much cotton, which transactions covered a period of several years; that Trabue, as president, would simply pass the amount of the proceeds of such cotton to the credit of appellant, and would then instruct appellant to draw against said amount; that prior to said 18th day of March, said Trabue, as president of said bank, had neglected to pass the proceeds of such cotton to appellant's credit, and that

appellant, on several occasions, called Trabue's attention to such failure, and that Trabue, in his capacity of president of the bank, would promise appellant that he would have the matter attended to; that he (Trabue) had simply overlooked the matter of having the proceeds passed to appellant's account and credit, but that nevertheless he had instructed the employés in the bank to pay any check or checks that appellant might draw against the bank; that appellant did not live in the town of Carthage, but lived about five miles away, and that he had implicit confidence in Trabue, and trusted him to see that proper credits were duly entered as he had promised and agreed to do; that his bank or pass book had not been checked up or balanced for some time, and that when he carried his bank or pass book to the bank and asked the cashier or other officers of the bank to check the same up and place the proper credits there, they usually made excuses that Trabue was not in, but that they would see him and have the proper credits entered, but that Trabue, as president, had instructed them to honor all checks drawn on said bank, and that the same would be promptly paid; that on or about the 18th day of March, 1912, appellant's pass book showed that he was due the bank the sum of $5,165, when in truth he was not due said bank such amount, said Trabue as president of said bank having failed to deposit to appellant's credit money paid to him as president of the bank.

Appellant further alleged that on or about said 18th day of March, 1912, Trabue, as president of said bank, came to appellant's residence late one evening, and told appellant that the bank examiner was checking up the bank, and that he was complaining about the bank books showing overdrafts of appellant; that Trabue brought along with him a slip of paper showing that appellant was due said bank an overdraft of $5,165, which amount corresponded with appellant's pass book and last check; that appellant told Trabue at the time, as president of the bank, that he did not owe the bank such a large amount, and that Trabue told appellant that it was necessary for him to collect said amount, and that if appellant would pay same that he (Trabue) would have his account corrected and all debits properly entered; that appellant then told Trabue that he did not have the money to pay off said amount, but that he had in the town of Carthage 128 bales of cotton; that he would turn the cotton over to Trabue, in his capacity as president of the bank, so that he could liquidate said indebtedness, as shown by the books of the bank, and that appellant could within a few days go to town and have his account checked up and all proper credits allowed; that appellant turned over to Trabue on that day, as president of

said bank, said 128 bales of cotton; that they agreed upon a stipulated price for said cotton, which amounted to $6,993.81; that from said amount they deducted $5,165, the amount which Trabue claimed that the bank books showed appellant to be overdrawn, and that Trabue, as president of the bank, executed to appellant his note for $14,125, being the balance that said Trabue claimed was due appellant for cotton purchased by Trabue in his capacity of president of the bank, from him, for which appellant had not been given credit at said bank; that $1,835 of this amount was the balance due from said cotton, after deducting $5,165 to cover said claimed overdraft. Appellant further alleged that Trabue, in his capacity as president of the bank, did not deposit or place to appellant's credit in the bank said sum of $5,165, but turned the same over to the bank by giving the bank a draft on another party, with bill of lading covering the 128 bales of cotton attached to the draft; that such draft was paid, and that the bank received the proceeds of said 128 bales of cotton, but did not credit, and afterwards refused to credit, appellant with said sum of $5,165, as Trabue, in his capacity as president, agreed to do; that in turning over the cotton to Trabue, as president, the same was so done to liquidate and pay off any overdraft which the bank held against appellant, with the understanding that any errors or any credits not theretofore received by appellant would be corrected; that in fact the books of the bank at that time showed that appellant had overdrawn his account $2,065.59, and that afterwards appellant drew checks, subsequent to said 18th day of March, in the aggregate amount of $682.61 which, added to the total amount due, as shown by the books of the bank, would make appellant due the bank the sum of $2,722.57; that against this amount appellant should have been credited with the sum of $5,165 paid to Trabue in his capacity as president, as before stated, which would leave a balance due appellant of $2,412.73; and appellant prayed for judgment over against said bank for the difference between $5,165 alleged to have been paid to Trabue as president of the bank, and for which he alleged the bank received the benefit, and the proceeds thereof, and the sum of $2,722.57, the amount appellant was actually due the bank.

In reply, by way of supplemental petition, appellee alleged that the authority of Trabue for the collection of debts, if any he had, was confined to the acceptance of money, and that if appellant ever turned over to Trabue, as president of the bank, any cotton, the same was not a payment to the bank on appellant's overdrafts, and that the same never came into its possession, with the knowledge that the same was turned over to Trabue in payment of any debt or overdraft of appellants. And further, appellee answered, substantially, that in purchasing the 128 bales of cotton from appellant, Trabue was not acting for the bank in making such purchase, but that such sale and purchase of such cotton was made between Trabue and appellant as individuals, and that such being so, the bank was not liable or responsible to appellant on account of Trabue's failure to place the proceeds of such cotton to appellant's credit in the bank, and that if Trabue, in so purchasing the cotton, did promise appellant to make such deposit of the proceeds, he did so as the agent of appellant, and not as the agent of the bank, and that the bank was not liable or responsible for such breach of the trust and confidence on Trabue's part.

The case was tried before the court without a jury, and resulted in a judgment allowing appellant a credit of $2,165.81 on the overdraft or claim sued on by appellee, but rendered judgment in favor of appellee for $682.68. This last-named sum was made up by checks that had been drawn by appellant on the bank subsequent to the 18th day of March, 1912. To this judgment appellant excepted, and gave notice of appeal to this court, which has been duly perfected.

The trial judge prepared and filed findings of fact and conclusions of law, as follows:

"Findings of Fact.

"(1) I find that R. E. Trabue, on March 18, 1912, was president of the Guaranty State Bank of Carthage, Tex., and had the right to collect debts due the bank, but had no right to collect anything from solvent persons except money, and that at the time defendant Hull was solvent.

"(2) I find that R. E. Trabue bought cotton from E. A. Hull on the 18th day of March, 1912, in his individual capacity, and that he collected the overdraft of said E. A. Hull, at said Guaranty State Bank, on that date, and that the amount of said overdraft on that date, as shown by the books, was $2,165.81, and that the said R. E. Trabue did not pay said amount to the Guaranty State Bank, as he promised to do.

"(3) I find that there was an agreement between the bank and E. A. Hull to pay 10 per cent. on all overdrafts, and that since the 19th day of March, 1912, the said E. A. Hull drew checks against said bank, which were paid, amounting to the sum of $682.68, and that the interest on the overdrafts up to the filing of this suit is $5.

"Conclusions of Law.

"I conclude, as a matter of law, that R. E. Trabue, as president of the Guaranty State Bank, having collected the amount of the overdraft, due said bank, to the 18th day of March, 1912, the same cannot now be collected by the said bank, although the said R. E. Trabue did not pay the same to said bank.

"I further conclude that the defendant, E. A. Hull, is indebted to said bank in the sum of $682.68, which amount is admitted by the

pleadings of said Hull, the same being the amount of checks drawn against said bank, and by it paid, since the 19th day of March, 1912, and that the plaintiff bank is entitled to judgment for said amount of $682.68, plus the sum of $5 interest on said overdraft, after the 19th day of March, 1912, and up to the filing of this suit, together with 10 per cent. per annum on said amount of overdraft since the date of the filing of this suit, February 3, 1913, and judgment will accordingly be entered."

It will be noted from the above that the trial judge, in his second finding of fact, found that Trabue, in purchasing the 128 bales of cotton from appellant on the 18th day of March, 1912, did not act for the bank in making such purchase, but that he bought said cotton from appellant for himself, individually. In other words, the court found as a fact that the cotton transaction between appellant and Trabue, in which the 128 bales of cotton was turned over by appellant to Trabue, was between those parties as individuals, each representing himself, and it is evident from the court's conclusions of law and judgment that the bank could not be held responsible to appellant because of Trabue's breach of promise to put the proceeds of such cotton to the extent of $5,165 to appellant's credit in the bank. We think this view of the trial court as to the law was correct.

Appellant's brief contains three assignments of error, but the third assignment embraces everything that is in the first and second, and our disposition of the third assignment will dispose of them all. That assignment is as follows:

"The undisputed facts, as well as the great weight and preponderance of the evidence, show that on or about March 18, 1912, R. E. Trabue, as president of the Guaranty State Bank of Carthage, Tex., represented to E. A. Hull that he was overdrawn at the bank in the sum of $5,165.87, and that the bank examiner was demanding of the bank that said overdraft be paid; and the pass book of E. A. Hull showing that the amount stated by R. E. Trabue as due was in good faith paid to the said R. E. Trabue as president of said bank, said $5,165.87 would be by the said R. E. Trabue as president passed to the credit of E. A. Hull to liquidate said indebtedness, and the said R. E. Trabue, as president of said bank, failed to place said $5,165.87 to the credit of E. A. Hull, but placed said amount to his own credit, so as to cover an overdraft that he owned the bank, the bank would be liable to E. A. Hull for said amount, and the bank, having received the proceeds of said sum of $5,165.87, would be estopped from claiming that R. E. Trabue had no right as president to collect said money, and that he having failed to place said amount to the credit of E. A. Hull, the bank would not be liable; and the court erred in so holding, under the facts above stated, which are shown by the great weight and preponderance of the evidence, as well as the findings of fact by the court, that E. A. Hull was only entitled to a credit for the actual amount that was due the bank,

and not for the amount represented to be due the bank by R. E. Trabue, and as shown by E. A. Hull's pass book that he actually paid the bank."

This assignment is submitted as a proposition. There is a second proposition under the assignment, which is as follows:

"R. E. Trabue, as president of the Guaranty State Bank of Carthage, having received from the defendant, E. A. Hull, 128 bales of cotton, the proceeds of which were to be used in the liquidation of the statement of an alleged overdraft of $5,165.87 claimed to be due said bank by E. A. Hull, and the proceeds of said cotton having been turned over to said bank, the bank would be estopped from denying liability for the value of said cotton, or the proceeds of the cotton, used by said bank, upon the ground that the amount received for the cotton was applied to the payment of the president R. E. Trabue's indebtedness, or that R. E. Trabue had no authority to take cotton for E. A. Hull's indebtedness, and in so doing he was not acting within his authority or the apparent scope of his authority."

[1, 2] It will be noted, from the quoted assignment and propositions thereunder, that appellant assumes that the uncontradicted testimony showed that in making the purchase of 128 bales of cotton from appellant, Trabue acted in his capacity as president of the bank, and that such a transaction was one made in the interest of the bank by Trabue as its president. If the state of the evidence, as we find it in the record, were such as to authorize us to hold that it was shown without dispute that in making the purchase of this cotton from appellant Trabue acted in his capacity as president of the bank, and that such transaction was one between appellant and the bank, acting through its said president, we would be inclined to hold that the bank would be responsible and liable to appellant for Trabue's failure to deposit the amount of the proceeds of the cotton to appellant's credit in the bank, as Trabue agreed to do. It is not true, however, as claimed by appellant, that the uncontradicted testimony shows that in making the purchase of this cotton Trabue acted for the bank or in his capacity as president of the bank. It is true that Mr. Hull, the appellant, testified that Trabue, throughout the transaction, acted in his capacity as president of the bank, and that appellant turned him over the cotton in his capacity as president of the bank, and would not have turned it over to him as he did as an individual. Trabue testified positively, however, that in making the purchase of this cotton from appellant he represented himself only, and that it was an individual transaction on his part; that he purchased the cotton on his own account, but admitted that he did tell appellant that out of the proceeds of the cotton, when he sold it, he would deposit enough money in the

bank to discharge the amount of appellant's overdrafts in the bank, whatever that amount was found to be, and he admitted, in the same connection, that he failed to make such deposit for appellant's benefit, and that in so failing he breached his promise and contract with appellant, and abused his confidence. We would not be authorized, in view of this contradiction in the evidence between appellant and Trabue, to hold that the trial court's finding, to the effect that the cotton transaction was between Trabue and appellant as individuals, has not sufficient support in the evidence to warrant such finding. On the contrary, it is made clear that this was an issue of fact for the court to determine upon diametrically opposed evidence, and the trial court, sitting without a jury, was compelled to determine that issue of fact and to pass upon the veracity of the witnesses, and having determined the matter in favor of the appellee, it is our duty to uphold it, which we do.

[3, 4] Whether or not the court's conclusion of law, as a whole, is consistent, it is not for us to determine, because there is no cross-assignment on the part of appellee. Our conclusion on the legal proposition involved is that although Trabue failed to keep his promise with appellant by depositing in the bank the amount of money, being the proceeds of the cotton for appellant's benefit or credit, as he agreed to do, and was therefore clearly guilty of a breach of trust, still the bank cannot be held responsible to appellant for such breach of trust, although, as claimed in the assignment, the proceeds of the cotton was deposited in the bank to Trabue's own credit. It was shown by evidence sufficient for the purpose that none of the officers of the bank, other than Trabue, knew anything about the nature of the cotton transaction between appellant and Trabue, and knew nothing, until long after the transaction, of any claimed promise on Trabue's part to deposit the proceeds of the cotton to appellant's credit in the bank. The cotton transaction between appellant and Trabue being a transaction in which Trabue acted as an individual and not as an official of the bank, the bank is not legally responsible for misconduct on Trabue's part, although it resulted in loss to appellant. It was so held, substantially, by the Texarkana Court of Civil Appeals on a former appeal of this case. See 165 S. W. 104.

In dealing with the question as to the liability of a bank for misconduct on the part of one of its officers, in a transaction resulting in loss to another, Ruling Case Law, vol. 3, § 86, p. 457, has this to say:

"In order that the bank may be held liable, it is, of course, necessary that the transaction be with the bank and not with the officer as an individual."

See, also, First National Bank of Allentown v. Williams, 100 Pa. 123, 45 Am. Rep. 365.

No useful purpose would be served by any further discussion, since it is clear that the trial court's second finding of fact has sufficient support in the evidence, and since the law must follow and be conclusive upon that finding of fact, the trial court's judgment is affirmed.