## CHARLESTON.

### GOLDEN v. O'CONNELL.

Submitted March 8, 1910.    Decided May 9, 1911.

CREDITOR'S SUIT—*Enforcement of Liens—Decree.*

Pending a chancery suit to enforce various liens against a debtor's land, some of the lienors holding first liens agree in writing that the debtor may sell a part of a tract in lots, the proceeds to go into the hands of a trustee to be applied on liens. Before decreeing the debts and sale of the balance of the debtor's land, the proceeds of such lot sales should be ascertained and the trust fund applied on the lien debts.   (p. 375).

(WILLIAMS, PRESIDENT, Absent).

Appeal from Circuit Court, Greenbrier County.

Bill by Paul Golden and others against Daniel O'Connell and others.    Decree for plaintiffs, and defendant O'Connell appeals.

*Reversed and Remanded.*

*R. S. Turk* and *Mollohan, McClintic & Mathews,* for appellant.

*L. M. McClintic* and *Price, Osenton & McPeak,* for appellees.

BRANNON, JUDGE:

Paul Golden having a judgment against Daniel O'Connell brought a chancery suit against O'Connell and various other lien creditors by judgment and deeds of trust to enforce his lien against land of O'Connell. It is a lien creditors' suit. A decree was rendered in the case fixing the amount of a very considerable number of lien debts against O'Connell and subjecting his land to sale.   He appeals.

A very important matter in this case and one which has given us some perplexity is this:   O'Connell was owner of several tracts of land on which the liens rested.   After report by a commissioner of a number of liens a number of those lienors entered into an agreement in writing reciting that O'Connell out of a tract of 127 acres called the "Drewry Place" at While Sulphur Springs had set apart about 25 acres for town lots, streets and alleys, to be offered for sale, they

consented that O'Connell might sell them and appointed W. E. Nelson their attorney with power to execute releases of liens to purchasers of lots on receipt of the purchase price, the money arising therefrom to be applied upon the liens upon the land in their order as reported by the commissioner in the cause. This writing was signed by the creditors hav-' ing the first liens in priority. Five lienors did not sign it. O'Connell filed an amended answer introducing that paper into the case, and alleging that a large number of lots had been sold, realizing about $5,000, and that a hotel had been sold for $3,000, which sales were partly for cash and partly on credit, making up about $8,000, and that the cash and notes had gone into the hands of Nelson. He asked that the case go to a commissioner to ascertain the amount in the hands of Nelson thus arising. It does not appear when this answer was filed. It is first mentioned in the decree of sale. No evidence substantiates this answer; but as no depositions could be taken until the answer was filed, and as the answer first appears in the decree of sale, we think that would excuse O'Connell for not taking such depositions. He virtually asked a continuance by asking that the fund in Nelson's hands be ascertained. It is apparent that as the first lien creditors consented to this agreement it should have been ascertained how much would arise from such lot sales applicable on the debts. The debts were decreed regardless of any credit from such sales. True, no evidence proves those matters; but the court had before it that answer and the agreement taken for true and that agreement showed that consent to such sale was given by the creditors and though it did not prove that such sales had been made, yet that agreement rendered the fact highly probable; that agreement rendered it plausible that there was a fund arising from the sale of those lots and that hotel of large amount which should be applied on the liens, a trust fund dedicated by agreement of O'Connell and the lien creditors for the payment of their debts. The decree did not sell the 35 acres, but sold the balance of the tract, reserving the sale of the 35 acres until further orders. We think that it was error to decree these debts against the balance of the land and sell it for the full amounts of the debts without first ascertaining and bringing in the funds arising from such lot and hotel

sales.    It seems to a court of equity inequitable to decree the whole amount of the debts and sell the balance of the land regardless of that fund.    These lien creditors had solemnly agreed to let this property be sold for payment of their debts. It is error not to ascertain the true amounts of liens before decreeing a sale.    It· is true the lienors not signing that agreement are not bound by it, but they seem· to be the subsequent lienors, and anyhow, though they may be delayed by our decision yet equity always delays creditors enforcing liens until the amounts of the liens shall be ascertained.

It is hardly necessary to refer to other matters as we see no other error, and those matters involve no legal principles.

We reverse the decree, and remand the cause to the circuit court for the purpose indicated above, and for other proper proceedings.

*Reversed and Remanded,·*