# CHARLESTON.

GOLDEN *et al.* v. O'CONNELL *et al.*

Submitted March 9, 1915.   Decided May 25, 1915.

1. CREDITOR'S SUIT—*Trustee for Creditors—Wrongful Distribution of Funds—Liability.*

   Funds collected ·for distribution by a trustee, pursuant to an agreement with lien creditors pending a suit by them, whereby he undertakes, with the assent of the debtor, to sell real estate and out of the proceeds pay liens in the order of priority as theretofore ascertained by a commissioner authorized for the purpose, should be so applied when and as collected; and, if not so applied, the ensuing loss, if any, should be charged to the creditors injuriously affected, and not to the debtor, the trustee not being his agent but the agent of·the creditors.   (p. 283).

2. SAME—*Distribution—Trustee for Lien Creditor—Control by Court.*

   Except in so far as necessary to determine and apply the amounts in the hands of the trustee as so agreed, the trustee was not, though subsequently made a party to the suit, subject to the direction and control of the court having jurisdiction of the suit, the agreement being one *in pais,* merely by virtue of the reference for the ascertainment of liens on the debtor's real estate.   (p. 285).

3. PRINCIPAL AND AGENT—*Payment to Agent—Effect.*

   Where one appoints an agent to act on his behalf in the receipt and disbursement of a fund, the transaction is complete, as to the debtor, when the fund reaches the hands of the agent, payment to him being the equivalent of payment to the principal.   (p. 284).

   (WILLIAMS, JUDGE, absent.)

Appeal from Circuit Court, Greenbrier County.

Suit by Paul Golden and others against Daniel O'Connell and others.   From decree for plaintiffs, the defendant named appeals.

*Reversed and remanded.*

*R. S. Turk, John A. Preston,* and *Wm. Gordon Mathews,* for appellant.

*Andrew Price, L. M. McClintic* and *F. R. Hill,* for appellees.

LYNCH, JUDGE:

After this cause was remanded on the former appeal (69 W. Va. 374), the commissioner appointed, acting pursuant, to the order of reference, reported, among other things, a fund of $4080.28 in the hands of Nelson as trustee under the agreement between defendant and some of his creditors whereby certain of his lands were to be sold and the proceeds applied to the discharge of their liens. He also reported, as the first lien against defendant's property, a debt of $6,164.38 in favor of A. F. Mathews, who joined in the agreement mentioned. The court, by its final decree, providing for a sale of defendant's property (other than that so sold by agreement) to satisfy the numerous liens adjudged against it, credited the trust fund on the Mathews debt as of January 12, 1912, three years or more after its receipt by the trustee.

The principal contention on the present appeal is that this was error; that the money so placed in the hands of Nelson should have been credited as of the date of its receipt by him. The agreement between defendant and his creditors was executed August 4, 1908. It authorized a sale by defendant of certain lots owned by him, and provided that the assenting creditors did thereby "appoint and constitute W. E. Nelson their true and lawful attorney, and empower him to execute in their names and under their seals a release of the lien to the purchaser of any lot or lots from the said land * * * * upon receipt from such purchaser of the proceeds of the price of said lot or lots, less the expenses and cost of sale, to be applied upon the liens on said land in their order and priority as reported in the suit".

In view of these express stipulations, the decree is manifestly erroneous. Nelson became the agent solely of the creditors to receive and disburse for them the funds arising from the lot sales. He acted in that capacity for them alone. They, not defendant, appointed him, and conferred and defined his authority. Prior to the trust agreement, the Mathews debt had been duly ascertained by a commissioner as the first lien against defendant's property. There was no exception at any time thereafter as to its validity. Its amount was in excess of the sum afterward coming into Nelson's

hands. As to these amounts there is no controversy. By the concluding clause of the agreement, the proceeds of the lot sales were to be "applied upon the liens on said land in their order and priority as reported in the suit". Properly interpreted, this meant that the fund derivable from sale of the land should be applied first to the Mathews debt, and the surplus, if any, to liens subsequent in priority. Hence, there could be no doubt or dispute as to the particular debt to which such fund was properly applicable.

In the absence of any fact constituting good cause for delay, and none appears in the record, it was the duty of Nelson to make application of the fund coming into his hands, promptly upon its receipt. The court had not assumed or exercised any control over this money, or over his functions and duties as prescribed by the instrument of his appointment. Nor did defendant have any such control. The assent of the latter to sale of lots particularly described, and to the application of the proceeds therefrom to liens specific and certain, constituted, in effect, a lawful appropriation *pro tanto* of his property to payment of such claims in so far as the land so set apart should be sufficient for that purpose. Clearly, he was entitled to have these entire proceeds applied, upon their receipt by Nelson, to the principal and interest of the Mathews debt. Where one appoints a person as his agent to receive a sum of money agreed to be paid in satisfaction of a claim, the settlement is complete the moment the agent receives payment. *Railroad Co.* v. *Ragan,* 104 Ga. 353. Payment to the authorized agent of a creditor by the debtor is equivalent to payment to the creditor himself. *Bicknell* v. *Buck,* 58 Ind. 354. So it has been held that when money intended for the payment of a note has reached the hands of an agent authorized to collect it, the debt is paid. *Boyd* v. *Page,* 2 Neb. 859; *Stuart* v. *Stonebraker,* 63 Neb. 554; *Pochin* v. *Knoebel,* 63 Neb. 768; *Osborne* v. *Gatewood,* 74 S. W. (Tex.) 72.

Sufficient proof, however, is lacking for the correct determination of the time as of which the Nelson fund should be credited on the Mathews debt. The present record shows that in June, 1911, after the decision of the first appeal, the cause was referred to S. N. Pace as commissioner, with direction

to ascertain the amount, status and proper application of the fund. But in August, 1912, his report, theretofore made, was upon exception and affidavit, rejected and excluded from the record, because of the prior relationship of the commissioner as counsel for certain of the creditors. It does not appear what his report was. The same order substituted as commissioner W. L. Kershner, who later reported the sum of $4080.28 as held by Nelson, trustee. While it does appear, from Nelson's testimony before Kershner in September,. 1912, that the sale of lots from which this sum was derived took place on August 6, 7 and 8, 1908, that Nelson at the time of his examination had disbursed the entire fund, and as a witness was then requested, and promised, to file before the. commissioner certain exhibits, specifically designated, showing an account of his collections and disbursements, these exhibits (which it would seem accompanied the Pace report) do not appear in the record; nor does the record in anywise show either the date of collection or of disbursement.

The decree is further erroneous in the omission of an adjudication of the deed of trust debt of Daniel Reiter, amounting to $2796.66. The lien was reported as a valid one against defendant's property, and there was no exception to the commissioner's finding. Doubtless, the omission was due, as intimated in argument, to inadvertence of counsel in the draft of the final decree. The mistake should be corrected by the chancellor when the cause is remanded to him for further proceedings. The question raised as to costs may likewise be adjusted at that time, in accordance with the equities then appearing.

We do not find merit in the other assignments. It is not suggested in what respect the bill was improperly amended by the addition of further parties, among whom were Nelson, trustee, and vendees in the lot sales who were still indebted on the notes given by them for deferred installments of the purchase money. Nor was defendant prejudiced, as claimed, by the absence of direct proof of the will of A. F. Mathews, on whose debt the Nelson fund was credited. The objection goes merely to the authority of his executors to receive payment. Prior to the first appeal, the court, on the suggestion of the death of A. F. Mathews, the creditor, ordered a revival

and a *scire facias* against his personal representatives. No writ was issued. But the court, by subsequent order, reciting that his three executors (naming them) had appeared and proved their claims before the commissioner then acting, directed that the suit stand revived as to them. On that appeal, it was assigned as error that no writ of *scire facias* was required to be issued; but this court did not pass upon that assignment. When the case was remanded, the executors were made parties to the amended bill, which alleged that they were lien creditors of defendant, and thus was cured the irregularity, if any, in the revival; and no issue as to their representative authority was ever thereafter raised, either by answer or plea, by exception to commissioner Kershner's report, or otherwise. At no time during the protracted litigation was the debt questioned, either as to amount or validity. Hence, we can not disturb the decree on this ground.

The remaining question is whether the decree is erroneous in failing to designate a place for the sale directed to be made of defendant's property to satisfy the liens against it. The terms and mode of sale were fixed, commissioners therefor appointed, and newspaper advertisement directed. The statute, §1, ch. 132, Code, does not require that the court shall fix the place of sale. That section provides that the court "may direct the sale to be made for cash, or on such credit and terms as it may deem best; and it may appoint a special commissioner to make such sale". The following section provides that "in the advertisement the commissioner shall state the time, terms and place of sale". The last provision would seem to leave the place of sale to the discretion of the commissioner, subject to review thereof as to the reasonableness of his requirement.

For the reasons assigned, we reverse the decree of December 11, 1912, and remand the cause, with directions to ascertain the date Nelson received the funds in his hands and to apply them as of that date to the Mathews lien, and to correct the other errors herein designated.

*Reversed and remanded.*