## HULL v. GUARANTY STATE BANK OF CARTHAGE. (No. 331–3686.)

(Commission of Appeals of Texas, Section A. June 21, 1922.)

**Banks and banking 107—Bank held liable for president's failure to deposit money as agreed to cancel overdraft, although overdraft not as large as president represented.**

Where the president of a bank purchased cotton from defendant and agreed to deposit part of the proceeds in the bank to defendant's credit to offset defendant's overdraft which, he stated to defendant, amounted to $5,165.85, the bank was liable to the defendant for that sum, where the president deposited the proceeds to his own credit, although defendant's overdraft at that time was actually only $2,165.85; the president having authority to collect money due the bank.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by the Guaranty State Bank of Carthage against E. A. Hull. Judgment for plaintiff was affirmed by the Court of Civil Appeals (231 S. W. 810), and defendant brings error. Reformed and affirmed.

Garrison, Pollard, Morris & Berry, of Houston, Young & Stinchcomb, of Longview, and H. N. Nelson, of Carthage, for plaintiff in error.

Edwin Lacy, of Longview, and J. G. Woolworth, P. P. Long, and R. W. Priest, all of Carthage, for defendant in error.

SPENCER, P. J. This is a suit by defendant in error, Guaranty State Bank of Carthage, to recover of plaintiff in error, E. A. Hull, an amount alleged to be due as a result of an overdraft by Hull.

For some time prior to 1912 and up to and including March 18, 1912, Trabue was the active president of the bank. In his individual capacity he often purchased cotton from plaintiff in error, Hull. He did not always pay him cash for it, but instructed the cashier of the bank to pay Hull's checks. This practice gave rise to an overdraft by Hull, which, according to the trial court's findings, amounted to $2,165.85 on March 18, 1912.

On this date Trabue and Hull had another transaction involving the purchase of 128 bales of cotton. Hull's version of the affair is that Trabue informed him that the bank examiner was in town, insisting that Hull's overdraft, which Trabue informed him amounted to $5,165.85, should be paid. Hull contended that, if Trabue would give him the credits due him for cotton previously purchased, the bank would be indebted to him instead of him being indebted to the bank. As a result of their dealings, the 128 bales of cotton were delivered to Trabue at the agreed price of $7,000.81, of which amount $5,165.81 was to be applied by Trabue in discharge of Hull's overdraft of indebtedness and the balance of $1,835 was included in a note for the sum of $14,125, executed and delivered by Trabue to Hull. The object of the note was to combine the various amounts due Hull from Trabue on previous transactions with the $1,835 item.

It will be observed from the foregoing statement that the bank's books showed

Hull's overdraft amounted to $2,165.85; whereas, Trabue informed Hull that his overdraft amounted to $5,165.85. Settlement between them was made on the basis of, the latter amount. There is a discrepancy of $3,000 in these figures, but this is accounted for upon the ground that Trabue, upon being informed on about March 5th that Hull was overdrawn $5,165.85, stated that it was too great and thereupon drew a draft on a New York bank for $3,000, which draft was eventually paid and Hull given credit therefor on March 6, 1918.

The warehouse receipts for the cotton were transferred by Hull to Trabue, and the latter delivered to the bank a bill of lading covering the 128 bales of cotton, with draft attached, drawn on H. Kempner & Co., Galveston, Tex., for $6,500. This draft was placed to the credit on the books of the bank to the bill of exchange accounts. Subsequent to March 18, 1912, Hull drew checks on the bank amounting to $682.61. This amount added to the previous amount of overdraft was made the basis of the action against Hull. The bank did not credit Hull with any part of the proceeds of the Kempner draft.

Plaintiff in error insisted that, as the bank received the cotton or its proceeds, he was entitled to have credit therefor. The bank denied the authority of Trabue to accept cotton in payment of the overdraft and denied that it had received the cotton or its proceeds on behalf of Hull.

In a trial before the court without the aid of a jury, the court rendered judgment allowing Hull an offset in the sum of $2,165.-85, and rendered judgment in favor of the bank for $682.61 plus $5 interest. Upon appeal this judgment was affirmed. 231 S. W. 810.

The uncontroverted evidence shows that the bank received the bill of lading and the draft, and that it collected the latter, but that neither Trabue nor Hull's account was ever credited with any part of the proceeds thereof.

It is observed that the trial court has found that Trabue had authority to collect debts due the bank, and that as president he collected the overdraft at the bank on March 18th. It is clear from these findings that the court also found that Trabue received the proceeds of the draft drawn on H. Kempner & Co. Upon no other theory can the court's conclusion that there was a collection of the overdraft be upheld, because there is, in the record, no suggestion of payment of the overdraft or any part of it in any other manner than by means of this cotton transaction. These findings must constitute the basis of the judgment to be rendered in the cause.

When Trabue, with authority to collect the debt due the bank, actually received, as president, the proceeds of the draft intended to discharge Hull's overdraft, the receipt of the money operated as a complete payment or discharge of Hull's indebtedness. Shaw et al. v. First State Bank of Abilene (Tex. Com. App.) 231 S. W. 325.

In the case cited, one Hurlbut, an officer of the defendant in error bank, delivered to the plaintiffs in error C. M. Shaw and Laura M. Shaw certain checks in their favor which had come into his possession. The defendant in error bank held a note for collection against plaintiffs in error which they desired to pay. Plaintiffs in error indorsed and redelivered the checks to Hurlbut, who promised to pay the note. Hurlbut cashed the checks and misappropriated the proceeds thereof without paying the note. The bank sued plaintiffs in error to recover on the note, and the latter pleaded payment to Hurlbut, a duly authorized agent of the bank. The bank insisted that Hurlbut was acting, not as its agent, but as agent of plaintiffs in error in the transaction and that, as the money was never received by it, it was not liable. This court, in disposing of that issue, said:

"The interests of plaintiffs in error in paying the note and that of the bank in receiving payment thereof were not necessarily adverse. No reason is perceived why one, an agent to pay a note, may not also be the agent of the holder to collect it or to receive the payment thereof. The fact that the agency to collect or receive payment of a stipulated demand and the agency to pay the same merge in one person violates no rule or principle of law, and the same person may act as agent for payee and payor in the transaction, unless their interests are adverse. It is a well-established rule that the payment of a note or other obligation is complete when money intended for its payment or discharge has reached the hands of an agent authorized to receive it. Golden v. O'Connell, 76 W. Va. 282, 85 S. E. 533, 2 A. L. R. 460. If, therefore, Hurlbut was in fact the authorized agent appointed by the bank to collect the note or receive payment thereof, payment to him of money intended to discharge it would operate as a payment of the same, notwithstanding he may have been the agent of plaintiffs in error to pay it."

The findings upon which this holding is based is not inconsistent with the finding of the court that Trabue purchased the cotton in his individual capacity. He could, while engaged in an individual transaction, perform an official act on behalf of the bank, provided the latter's interest did not conflict with his own. It is beyond cavil that, in making a collection of the draft, the interests of the bank were not antagonistic to the interests of Trabue. The only act required of him was to separate the bank's money, which he as its agent had collected, from his own.

Let it be conceded, however, that Trabue

did not actually receive the proceeds of the draft. If Trabue did not receive the cash nor credit for the proceeds of the draft, and if Hull did not receive credit therefor, then the bank must have received and enjoyed the proceeds because it is undisputed that the draft was paid to the extent of $6,000. If the bank received and retained this money it would be liable to plaintiff in error, regardless of the authority of Trabue to collect it. People's Bank v. Manufacturers' National Bank, 101 U. S. 181, 25 L. Ed. 907.

Under the findings of the trial court that, as agent of the bank, Trabue collected the proceeds of the draft, plaintiff in error is clearly entitled, as a matter of law, to a credit of $5,165.85 instead of $2,165.85, as stated by the court.

As president of the bank Trabue informed Hull that the latter's overdraft amounted to $5,165.85, when in fact it amounted to $2,165.85. By this statement as agent of the bank, authorized to collect overdrafts, he collected from Hull $3,000 more than the bank was entitled to receive. The collection was made in his official capacity, as were his representations as to Hull's indebtedness, and not in his individual capacity. The transaction must therefore be viewed as a transaction between Hull and the bank and not confused with the private transaction between Hull and Trabue. The transaction between Trabue as an individual and Hull has no proper place in this investigation. It would be improper to undertake to adjust their differences in this suit. This is in fact a suit for an accounting between the bank and Hull.

It is insisted upon behalf of the bank that, if Trabue had informed Hull as to the correct amount of the overdraft, that it would simply have resulted in increasing the amount of the note executed by Trabue, and hence no injury could have or has resulted to Hull, beyond the loss of the $2,165.85 for which the judgment compensates him. It is matter of mere speculation as to what would have been done in the event Trabue had informed Hull of the exact amount of his overdraft. It may be that Hull would, in that case, have extended Trabue credit for an additional amount of $3,000. But, at any rate, it is outside the province of the courts to enter the realm of speculation, and undertake to adjust the rights and liabilities of these parties upon assumed or supposed facts, constituting an independent transaction between Trabue, as an individual, and Hull.

If Trabue had in fact paid $3,000 to the bank in discharge of Hull's indebtedness, out of the sum collected on March 18, 1912, then the extent of Hull's offset in this suit would be $2,165.85. But there is no direct finding by the court as to the $3,000 item. The court does find, however, that, on the date that the $5,165.85 was collected from Hull, he owed the bank but $2,165.85. This finding implies that Hull had received credit for the $3,000 before the transaction of March 18th occurred. In fact the bank's records show that Hull was given credit for this amount on March 6th. This item is therefore disconnected with the collection of $5,165.85 on March 18th. The bank, through its president who had the undoubted authority to collect overdrafts, has collected $3,000 more than it was entitled to collect from Hull and should therefore respond in damages therefor.

On May 31, 1912, the bank informed Hull that he was overdrawn $2,848.32, which included $682.68, the amount of checks drawn on the bank after the transaction of March 18, 1912, but which did not take into account the $5,165.85 collected by Trabue. The failure to take the latter amount into consideration amounted to a repudiation of its liability for this collection. Plaintiff in error is entitled, therefore, to recover from defendant in error bank the difference between $5,165.85 and the actual amount of Hull's overdraft on May 31, 1912, found by the court to be $2,848.53, or $2,317.32 with interest on the latter amount at the rate of 6 per cent. per annum from May 31, 1912, to April 20, 1920, —the date of the trial court's judgment— or $1,096.49. The total amount of the judgment which the court should have entered was $3,413.81, which amount draws interest from the date of the judgment. The trial court allowed defendant in error bank $5 interest on the $682.68 item upon the theory that there was an overdraft. As we have indicated there was no overdraft, hence the $5 interest should not have been allowed.

We recommend, therefore, that the judgments of the trial court and of the Court of Civil Appeals be reformed so as to allow plaintiff in error to recover of defendant in error the sum of $3,413.81, with interest thereon from April 20, 1920, and that, as so reformed, it be affirmed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reformed so as to allow plaintiff in error to recover of defendant in error $3,413.81, with interest from April 20, 1920, at 6 per cent. per annum, and, as reformed, such judgments are affirmed.