Ras BUCKNER, (Plaintiff) Appellant,

v.

WESTERN LIFE INSURANCE COMPANY, Garnishee, Respondent,

C. Y. Abernathy and H. J. Crittenden, Defendants.

No. 31707.

St. Louis Court of Appeals.

Missouri.

Sept. 15, 1964.

W. W. Sleater III, St. Louis, for appellant.

R. H. McRoberts, Jr., St. Louis, for respondent-garnishee.

L. F. COTTEY, Special Judge.

Plaintiff, endeavoring to collect his judgment against defendant Crittenden, summoned Western Life Insurance Company as garnishee. The garnishee's answer denied that it had, or since the date of service of the writ upon it had had, in its possession or under its control any moneys or credits belonging to Crittenden. The answer was traversed and, upon the issue thus raised, judgment was entered in favor of the garnishee. From that judgment plaintiff appeals.

The cause was submitted upon an agreed statement of facts from which it appears that at all times pertinent to the inquiry Crittenden had been employed by the Company to collect premiums as they became due on life insurance policies which it had issued to a number of persons in the St. Louis area. The written contract between the Company and Crittenden authorized him to issue the Company's receipt for each premium paid to him and stipulated that he should receive for his services a commission of 10% to 25% of the premiums he collected, the same to be "payable as premiums are paid in cash to the Company." The quoted clause was probably intended to require Crittenden to remit his collections in full to the Company, from whom he would afterwards receive a check for the commissions earned; but the business was never actually handled in that manner. It was Crittenden's uniform practice, with the Company's approval, to deduct his commission from each collection and to remit to the Company only the net remaining portion of the premium. We will therefore treat the contract as having been amended by the parties to authorize that practice. Following that practice, between the date of service of the writ and the return date thereof, it stands admitted that Crittenden collected premiums in the gross amount of $3,253.73 from which he deducted his commissions in the aggregate amount of $976.82, remitting to the Company only the net balance of $2,276.91.

It is plaintiff's position that this arrangement has resulted, for all practical purposes, in the payment by the garnishee of $976.82 to Crittenden in disregard of the writ; hence, that the garnishee is li-

able to plaintiff for that exact sum. The garnishee, on the other hand, insists that under the admitted facts the commissions deducted by Crittenden were never in its possession or under its control; hence, that there is no liability to plaintiff under the writ.

The precise question seems never to have arisen before. Plaintiff cites only the statutes relating to garnishments, of which only Section 525.040, RSMo 1949, V.A.M. S., need be noticed at the moment. It provides that the writ " * * * shall have the effect of attaching all personal property * * * credits * * * or other choses in action of the defendant in the garnishee's possession or charge, or under his control at the time of the service of the garnishment, or which may come into his possession or charge, or under his control, or be owing by him, between that time and the time of filing his answer." The garnishee's authorities, with a single exception to be discussed in the next paragraph, go no farther than to announce the general rule that a credit is not susceptible of garnishment as the property of a defendant unless it be in the possession of the garnishee at some time during the effective life of the writ, nor unless the defendant can himself maintain an action against the garnishee for its value. 38 C.J.S. Garnishment § 70, p. 265; Ralston Purina Co. v. King, Mo.App., 101 S.W.2d 734; Mississippi Valley Trust Co. v. Francis, Mo.App., 186 S.W.2d 39. Thus the statute and the rule. Our problem is to determine whether Crittenden's appropriation of his commissions at the time he collected the premiums brings the credit sought to be garnished in this case within the purview of the one or the application of the other.

The garnishee cites Sheridan v. Short, Mo.App., 237 S.W.2d 230, as authority for the proposition that at no time has it had in its possession or under its control the commissions which Crittenden deducted from his collections; hence, that the writ could not reach them. In that case the garnishees were engaged in the business of baking doughnuts in wholesale lots. They did not sell them directly to retailers or other consumers, however. Instead, they delivered them on consignment to the drivers of their trucks at a fixed price per dozen or other unit, and the drivers, in turn, acting on their own initiative as jobbers, sold them to whatever customers they could find and apparently at whatever prices they could get. At the end of the day the drivers settled up by paying the garnishees the consignment cost of the doughnuts they had disposed of. All proceeds in excess of that cost were retained by the drivers as "commissions" on the sales they had made. Plaintiff's judgment debtor was one of garnishee's drivers. She summoned the garnishees in an effort to attach in their hands whatever sums they might be obligated to pay him. The court held that the garnishees were not liable for the money retained by him out of the proceeds of his sales. The rationale of the ruling is found in this sentence, 237 S.W.2d l. c. 231, "It thus appears that whatever money Sheridan (the judgment debtor) earned accrued to him personally as his commission whenever he made a sale of doughnuts, and that the company never owed him such amount." We agree with that ruling. It will be observed, however, that throughout the opinion the term "commission" has been used inexactly as a synonym for "profit". Sheridan sold nothing on a commission basis. The arrangement between him and the garnishees afforded no occasion for them to become indebted to him for "commissions" or anything else. He bought the doughnuts from the garnishees at an agreed price and sold them to his own customers on his own terms, in every respect as an independent dealer in the conduct of his own private enterprise. The difference between the cost of the merchandise to him and the price he received for it on re-sale was patently his *profit* on the business; obviously it accrued to him personally as the case says, and "the company never owed him such amount." A wholesaler is never indebted to his jobber

or retailer for the latter's profit. It is not a credit in the wholesaler's possession or under his control, and garnishment cannot reach it. The only basis for the claimed analogy between the Sheridan case and this, then, is the unfortunate confusion of the terms "commission" and "profit," and it entirely disappears when that confusion is dispelled.

The dissimilarity between the two cases, on the other hand, becomes even more manifest as their facts are analyzed. In this case, for instance, there was a contract between the garnishee and each of its policyholders whereby the latter became indebted to the former to the extent of the premiums specified in the policies. Crittenden merely collected those debts for the garnishee as they fell due, and for that purpose he was clearly the garnishee's agent. It follows that when a policyholder paid a current premium to Crittenden and received from him the Company's authorized receipt therefor, it was in law and in fact a payment to the Company of a debt due the Company. "Payment to the authorized agent of a creditor by the debtor is equivalent to payment to the creditor himself." Golden v. O'Connell, 76 W.Va. 282, 85 S.E. 533, 2 A.L.R. 460, 461. So, it was the Company's money; and it was in the Company's possession because the agent's possession is the possession of the principal. McNeill v. Fidelity & Casualty Co. of New York, 336 Mo. 1142, 82 S.W.2d 582, syllabus 1. But in the Sheridan case there was no agency. No contract whatever existed between the wholesalers and the ultimate purchasers of the doughnuts. The latter were unknown to the former. The purchasers bought their doughnuts from Sheridan as an independent entrepreneur. They owed him for them, not the wholesalers; and when they paid him for them it was payment of a debt due him, not the wholesalers. *All* the money Sheridan received belonged to him personally; none of it was collected by him as agent for the wholesalers, and the fact that he was independently indebted to the wholesalers for the initial cost of the merchandise is a totally irrelevant circumstance. It was necessary that the wholesalers be indebted to him for the writ to prevail.

To examine this aspect of the problem a little further: It may be conceded that money in the possession of an agent is ordinarily in the possession of his principal only when it has been received by the agent in payment of a debt due the principal. If an agent receives money in payment of a debt due himself, that money is his; the principal has no concern with it, no control over it, and no possession of it. To avoid the implications inherent in the concept of Crittenden's agency in this case, then, it is necessary for the garnishee to take the position that the premiums collected by Crittenden from the policyholders were not entirely in payment of debts due his principal, but that a portion of them "accrued to him personally as his commissions," just as Sheridan's profit on his sales of doughnuts "accrued to him personally;" hence, that he received that portion as payment of a debt due himself, and the garnishee had no control over it and no possession of it. The trouble with that proposition is that it necessarily proceeds upon the assumption that the *policyholders* owed Crittenden his commissions; otherwise, the money received from the policyholders could in no sense constitute the payment of a debt due Crittenden. But, of course, the policyholders owed Crittenden nothing. They had no contract whatever with Crittenden, they bought their policies directly from the garnishee, they owed only the garnishee for them, and when they paid their premiums it was payment of a debt due solely to the garnishee. The situation in the Sheridan case was the exact opposite. There the buyers of the doughnuts had no contract whatever with the garnishees, they bought their doughnuts directly from Sheridan, they owed only Sheridan for them, and when they paid the purchase price it was payment of a debt due solely to Sheridan.

Confirming our view that the money collected by Crittenden was *all premium—*

hence, a debt due solely to the garnishee—is the fact that neither the policies themselves nor the law generally affords any basis for regarding these collections as being somehow divisible into separate funds, one to be termed "net premium" and treated as belonging to the Company, and the other to be termed "commission" and treated as belonging to Crittenden. Were it otherwise, then it would have been allowable for Crittenden to have collected from a policyholder whom he desired to favor only, say, 75% of the premium stipulated in the policy, voluntarily relinquishing his 25% commission; and by the same token the Company would have been obliged to continue the policy in force upon receipt of that amount since it would represent the only portion of the premium to which it had any legitimate claim. But that practice is expressly prohibited by our anti-discrimination statute, Sec. 377.360, RSMo 1949, V.A.M.S. The garnishee was required by that statute to charge each of its policyholders the same amount for the same risk, and it was obliged to collect the full premium from all in order to avoid giving one an advantage over the others. So, we say again, the money collected by Crittenden was all premium—a debt due solely to the garnishee.

The plain fact is that simultaneously with the collection of a premium by Crittenden there arose on the part of the Company an obligation to pay him his agreed commission on it. This the Company could do in either of two ways: (a) by sending him a check for it, or (b) by permitting him to deduct it from the money he collected. Let us suppose, now, that the Company had by contract specified, or by custom adopted, the first method. Would it not be conceded in that event that between the date the commission was earned and the date it was paid, a credit for the amount would have existed on the Company's books in Crittenden's favor, and the writ in this case would have reached it? That was the situation and that was the holding in Steer v. Dow, 75 N.H. 95, 71 A. 217, 20 L.R.A., New Series, 263. How, then is the situation funda-

mentally changed by the fact that the second method was used? By way of illustration, suppose Crittenden had been employed as a clerk in the Company's office at a salary of $100 per week, and by long standing practice he had been allowed to take $100 from the Company's cash drawer each Saturday night in payment of his salary. Could it be urged with any semblance of logic that that was not, in fact, a payment of the debt to him, or that it was not, in fact, a payment by the Company out of Company money? That was substantially the situation and that was the holding in Dinkins v. Crunden-Martin Woodenware Co., 99 Mo.App. 310, 73 S.W. 246. Crittenden's commissions were simply his wages. They were due absolutely, free from any condition or contingency, the moment he earned them by collecting the premiums. The money he collected from the policyholders was to all legal intents and purposes money in the Company's cash drawer, and the fact that he was authorized to withdraw his commissions from it does not make it any less a payment of those commissions to him by the Company. Indeed, if it was not payment, then the debt is surely still due. The inescapable conclusion is that by either method we arrive at the same result: The garnishee owed Crittenden and the garnishee has paid him, in disregard of the writ. It begs the question to say that Crittenden cannot maintain an action against the garnishee for his commissions. Of course, he cannot now do so; but only because he has been paid. And it is equally futile to suggest that he "paid himself," in a manner of speaking, and the Company had nothing to do with it. If he paid himself he did so as the Company's agent, with the Company's connivance, and his act in doing so is the Company's act. "What one does by another he does by himself." State v. McClure, 325 Mo. 1228, 31 S.W.2d 39, 46.

The judgment must therefore be reversed and the cause remanded with instructions to the trial court to enter its order requiring the garnishee to pay into court the sum of $976.82 for the plaintiff's benefit, as provided

by Section 525.080, RSMo 1949, V.A.M.S., and, in the event of the garnishee's failure to do so, to enter judgment against the garnishee for said amount, as provided by Section 525.200, RSMo 1949, V.A.M.S.

It is so ordered.

RUDDY, P. J., and ANDERSON, J., concur.

WOLFE, J., not participating.