MINNIE MCNEILL v. FIDELITY & CASUALTY COMPANY OF NEW YORK, a Corporation, Appellant.—82 S. W. (2d) 582.

Division Two, May 7, 1935.*

*Wayne Ely* and *Tom Ely, Jr.,* for appellant.

---

*NOTE: Opinion filed at September Term, 1934, March 30, 1935; motion for rehearing filed; motion overruled at May Term, May 7, 1935.

1144

*Strubinger & Strubinger* and *Freeland L. Jackson* for respondent.

WESTHUES, C.—Respondent, Minnie McNeill, on January 24, 1928, was injured while a guest at the Marquette Hotel in St. Louis, Missouri. She obtained a judgment for her injuries against the hotel company in the sum of $7,500. Subsequently, in an effort to collect her judgment she instituted garnishment proceedings against appellant in this case, Fidelity & Casualty Company of New York. This company defended on the theory that its public liability policy, issued September 26, 1927, was not in force on the date respondent was injured. Upon a trial of the case there was a verdict and judgment against appellant in the sum of $8,803.64, representing the original judgment and interest. From this judgment appellant duly appealed.

On September 6, 1927, appellant issued its public liability insurance policy, No. 5300327, in favor of Charles E. Hallenbeck, who was at that time operator of the Marquette Hotel. On December 29, 1927, Hallenbeck transferred the hotel to the Marquette Hotel Company, a Missouri corporation, which company operated the hotel until about February 1, 1928, when the assets of the company were placed in the hands of Mr. Lawrence Sturgis Day, who took charge of the hotel as trustee for the first mortgage bondholders.

Appellant, in its brief, aptly stated the issue in the case as follows:

"The main issue in the case is whether or not O & T Policy No. 5300327, issued on September 6, 1927, to Charles E. Hallenbeck, an individual, trading as Marquette Hotel, was assigned or transferred from Charles E. Hallenbeck to the Marquette Hotel Company, a corporation. Plaintiff, respondent, claims that it was so transferred, and garnishee, appellant, claims that it was not."

The policy of insurance contained provisions specifying in what manner it could be assigned. Blank forms of assignments were printed on the back of the policy. The requirement for the transfer of the policy was that insured was required to assign the policy subject to the written consent of appellant company. Provisions in the policy, covering indorsements, read as follows:

"J. If the business of the Assured is placed in the hands of a receiver, assignee or trustee, whether by the voluntary act of the Assured or otherwise, this policy shall immediately terminate, unless such change is recognized by an endorsement signed by the President, Vice-President, Secretary, or one of the Assistant Secretaries of the Company; but such termination shall not affect the liability of the Company as to any accidents theretofore occurring. A reorganization, reincorporation, consolidation, or amalgamation of the Assured, if a corporation; or a dissolution of the Assured, whether by the voluntary act of the Assured or otherwise, if the Assured is a partnership or joint-stock association; or the formation of a partnership, if the Assured is an individual; shall in like manner terminate this policy, unless it is endorsed as specified above. . . .

"O. No erasure or change appearing on this policy as originally printed nor change or waiver of any of its terms or conditions or statements, whether made before or after the date of this policy, shall be valid unless set forth in an endorsement added hereto and signed by the President, Vice-President, Secretary, or one of the Assistant Secretaries of the Company. Neither notice given to nor the knowledge of any agent or any other person, whether received or acquired before or after the date of this policy, shall be held to waive any of the terms or conditions or statements of this policy, or to preclude the Company from asserting any defense under the said terms, conditions and statements, unless set forth in an endorsement added hereto and signed by one of the said officers."

The evidence in the record showed substantially the following facts: Hallenbeck transferred the Marquette Hotel property on December 29, 1927, to the Marquette Hotel Company, a corporation. Hallenbeck lived in Chicago. He signed the deed and necessary papers to effectuate the transfer. Hallenbeck testified that he signed a number of indorsements, or requests for the transfer of insurance policies, but did not remember which policies were concerned. He testified that he intended to transfer the whole business to the corporation.

Mr. T. H. Cobbs testified that he, as attorney for Hallenbeck, signed a number of requests to transfer insurance policies, but did not remember signing a request of the policy here in question. Respondent introduced an indorsement marked Exhibit N, which read as follows:

" 'Endorsement.

" 'The Fidelity & Casualty Company of New York. Liability Department—Assignment.

" ' (For owners and tenants, druggists and elevator liability policies only.)

" 'Form 707BL.MM. Date: January 9, 1928.

" 'The company hereby consents to the assignment of the policy designated below to whose address is Marquette Hotel Company, Incorporated, southeast corner Eighteenth and Washington avenue, St. Louis, Missouri, and agrees that on and after the date hereof, the name and address of the said assignee shall be the name and address of the assured under the said policy.

" 'The foregoing consent and agreement are subject to all the agreements, conditions and limitations of the said policy, and to the further condition that this consent shall not *take effect, but shall be null and void unless the assignee is in lawful possession of the said policy and is legally entitled to the said assignment.

" 'This endorsement shall not be effective unless countersigned by a duly authorized representative of the company as a part of owners' and tenants' liability policy No. 5300327, issued to Charles E. Hallenbeck et al.

" 'This endorsement shall be void if any erasure or change is made in the form as printed or if the form is used for any policy other than those described in heading.

" 'Countersigned:   J. H. Belden,
" 'Resident Manager.' "

This exhibit was found in the files in the law offices of Lubke & Lubke, St. Louis, Missouri, with the following letter introduced in evidence and marked respondent's Exhibit O:

" 'January 26th, 1928.

" 'Lubke & Lubke,
" '818 Olive Street,
" 'St. Louis, Missouri.

"In re: C. L. 210 Marquette Hotel.

" 'Gentlemen:   We are enclosing Fidelity & Casualty Company endorsements to be attached to owner's and tenant's policy No. 5300327 and to Workmen's Compensation policy No. 6239139.

" 'Very truly yours,
" 'International Life Insurance Company,
" 'By W. T. Fowler, Jr.' "

Fowler, the author of Exhibit O, at the time was representing the International Life Insurance Company, which company owned a large amount of the first mortgage bonds on the hotel building. It was Fowler's duty to see that the building was properly insured, and in case of a transfer of title to see that the insurance policies were duly assigned to the new owner. Mr. Karl F. Lubke, of the firm of Lubke & Lubke, also represented certain bondholders and had possession of a number of insurance policies covering the hotel. Lubke was the insurance broker at whose instance the policy in question and other policies were issued. He had authority from Hallenbeck to authorize the issuance of these policies. Lubke paid the premium on the policy in question to Witte & Company, the insurance agency, who in turn remitted to appellant company. Fowler testified he did not remember how he came to have possession of Exhibit N. He stated that in line with his duties he sent the exhibit to Lubke whom he presumed had possession of the policies covering the hotel and was entitled to the indorsement. Appellant's evidence developed the fact that Lubke did have possession of the policy. Lubke, as above stated, had control of the insurance on the hotel property. He placed the business with Oscar R. Witte & Company of St. Louis, an insurance agency. This company wrote Lubke a letter, dated March 9, 1928, concerning the cancellation of a number of fire and tornado policies, a compensation insurance policy and also the policy here in question. The letter, in so far as referring to this policy, read as follows:

" 'March 9th, 1928.

" 'Mr. Karl E. Lubke,
" 'Paul Brown Bldg.,
" 'St. Louis, Mo.
" 'Dear Mr. Lubke:
" 'Re: Insurance Marquette Hotel.

" 'Having in mind the subject of our conversation of the other day, in reference to change of ownership for the above captioned premises, we find upon our files the following insurance policies in full force and effect.
" 'Fire Contents: . . .
" 'Compensation Insurance:
" 'Fidelity & Casualty Company of N. Y.
#6239139
" 'Owners' and Tenants' Public Liability Fidelity & Casualty Co. of N. Y.
#5300327
" 'If the writer understood you correctly it was your intention to cancel and surrender all of the above captioned policies, for the reason that no part of the premium had been paid to you.

" 'This is a rather unfortunate and embarrassing situation. Under the fire contents policies we have paid a loss. Likewise a claim has been presented under the compensation policy, and four claims under the public liability policy. . . .

" 'We note that all of the policies, excepting the public liability policy is carried in favor of Marquette Hotel Company, a corporation, whereas the public liability policy is running in favor of Lawrence Sturgis Day, individually and trustee of the Marquette Hotel Company.' "

J. H. Belden was appellant's representative in the city of St. Louis, with authority to countersign indorsements. Belden testified that it was a practice not to give the company's assent to the transfer of a policy unless a request therefor had been made. He testified that he did not personally sign Exhibit N, but that his signature thereto was authorized and that it was his understanding that a request for transfer had been made. He also testified that in the usual course of business such an indorsement would be sent to the insurance agency handling the business, in this case Oscar R. Witte & Company, who in turn would send it to Mr. Karl F. Lubke, the producer of the business.

Mr. Karl F. Lubke died prior to the trial. Neither respondent nor appellant had taken his deposition and, therefore, the triers of the case were deprived of the benefit of facts of which Mr. Lubke had knowledge.

Exhibit N was not attached to the policy. The evidence disclosed that it was a practice to make indorsements of this character in triplicate; one to be attached to the policy, another to be kept by the company's agency and the third to be sent to the home office. It was appellant's contention that the fact that Exhibit N was not attached to the policy and that no showing was made that a duplicate thereof was kept, by the company, and that no request had been made for a transfer, showed that the policy was never legally transferred and the trial court should have directed a verdict for appellant.

Witnesses for appellant admitted that Exhibit N was sufficient in form and had it been attached to the policy the transaction could have been considered a transfer of the policy to the Hotel Corporation if appellant company had consented thereto. It is argued that the evidence failed to show that there was any request for the transfer of the policy. Evidence introduced, by appellant, not only failed to negative such fact, but was sufficient to establish the fact. Mr. Belden, appellant's manager, testified that he learned in March, 1928, that a request for the transfer was in fact made. He also testified that he did not know whether employees in his office sent a copy of Exhibit N to the home office; that his office kept a record of policies issued, which record was referred to as a "daily," and that when a transfer of a policy was completed a copy of the indorsement was

pasted on the daily. This record referred to as a "daily," if in existence, was not introduced in evidence. Appellant was permitted to introduce evidence showing that the original policy did not disclose any evidence of an indorsement having been pasted or pinned thereon.

Appellant, among other cases, cites Rendelman v. Levitt (Mo. App.), 24 S. W. (2d) 211. That case involved liability of appellant under the policy here in question. We have no quarrel to find with the opinion in the Rendelman case holding that the company was not liable. The opinion holds, and rightly so, that a public liability insurance policy of this character is a personal contract and cannot be assigned without the consent of the parties to the contract. The evidence in that case, as the opinion discloses, showed Levitt, the operator of the hotel at the time the plaintiff in the case was injured, had no knowledge of the fact that the policy was in exist- 'ence. Note the following taken from the opinion:

"Moreover, the evidence shows that Levitt never discovered that the Fidelity policy had been delivered into his possession, and did not know that he had it in his possession, and there was therefore no acceptance of the policy by him, until after the injury to plaintiff had occurred. We do not see how an assignment of the policy so as to make it effective at the time of such injury can be predicated on such a delivery."

In the case at bar the Marquette Hotel Company notified appellant in writing, immediately after the accident, that Minnie McNeill had been injured and appellant's investigator made an investigation of the accident. It also appears in the opinion in the Rendelman case that Levitt was the third operator of the hotel since Hallenbeck, that is, Hallenbeck transferred the hotel on December 29, 1927, to the Marquette Hotel Corporation, which company in turn transferred it to Lawrence Sturgis Day, as trustee; on February 10, Day made a transfer to Levitt, as trustee under a second deed of trust, and on March 7, 1928, the property was foreclosed under a deed of trust and sold to a corporation.

We further learn from the opinion that while Day was in charge of the hotel an indorsement of the policy here in question was mailed to Hallenbeck to be signed, but he refused. The reason for the refusal is not disclosed by the opinion. Hallenbeck, in the case at bar, testified that he intended to transfer all of his interest in the hotel, including insurance policies, to the hotel corporation. In such a case Hallenbeck had no further interest in the policies and that may have been the ground of his refusal. That, however, is immaterial in this case. From what has been said it will be seen at once that the case referred to is not similar to the case at bar. In this case there was evidence of a request for the transfer of the policy from Hallenbeck to the corporation. Hallenbeck and his

attorneys signed a number of such requests. ■ The company gave its written consent thereto and the indorsement transferring the policy was sent to Lubke. Fowler examined it for the bondholders and evidently approved the transfer. Appellant's witnesses testified Lubke was the proper person to have the indorsement. Under the law, Lubke's possession of the policy was equivalent to the hotel company's possession. [Home Ins. Co. v. Woods, 274 S. W. 520.] The policy was accepted by the hotel corporation, as evidenced by their written notice to the company, immediately after the accident, which was the basis of the judgment sued on. ■ We are of the opinion that not only was there sufficient evidence authorizing a finding by a jury that the policy had been transferred from Hallenbeck to the Marquette Hotel Company prior to the accident, but the fact was proven by a preponderance of the evidence. [Home Ins. Co. v. Woods, supra; Ferguson v. Home Ins. Co. of New York, 208 Mo. App. 422, 236 S. W. 402; Compton Heights Laundry Co. v. General Acc., Fire & Life Assur. Corp., 195 Mo. App. 313, 190 S. W. 382.]

■ Appellant assigns as error the refusal of the trial court to give Instructions B and E, as requested by appellant. Instruction B in effect directed a verdict for appellant and was, therefore, in view of the evidence introduced by respondent, properly refused. By Instruction E appellant sought to submit to the jury its theory of the case, that is, if the jury believed and found that the policy was not transferred then they should find for appellant. Appellant was entitled to have that issue submitted. We find that the court gave, at appellant's request, Instruction No. 2, which in plain terms told the jury if they found and believed that the policy in question was not transferred from Hallenbeck to the Marquette Hotel Company prior to January 24, 1928, then their verdict should be for the defendant. Instruction E, while more lengthy, was in substance the same as Instruction No. 2. Instruction 2 fully covered the question and, therefore, it was not error for the trial court to refuse Instruction E.

■ Next, error was assigned because the trial court was alleged to have, during the trial of the case in the presence of the jury, made improper and prejudicial comments. It appears from the record that there were numerous occasions during the trial of lengthy colloquy between the attorneys and the trial court within the hearing of the jury. Such practice is not commendable for the reason that during such lengthy colloquy comments are likely to be made which may have an influence upon the minds of jurors. Whether or not reversible error resulted depends upon the nature of the comments and the circumstances in which they were made. In this case, as will be noted from the statement of the evidence, appellants contended the transfer of the policy from Hallenbeck to the hotel company was not completed because the indorsement was not attached

1152

to the policy. While Mr. Blatzer, who was connected with the Witte Insurance Agency, was testifying as a witness for respondent, he was asked questions concerning the proper manner of transferring policies. This witness maintained that the only way a policy, such as was under consideration, could be legally transferred was for the company to authorize its transfer by signing the indorsement blank on the policy itself. Attorney for respondent then asked what we might call leading questions to the effect that if the company in fact signed an indorsement in the same form as that appearing on the policy, and such indorsement were attached to the policy, would that not constitute a transfer. Attorney for appellant objected on the ground that the attorney for respondent was cross-examining his own witness. The record discloses the following to have occurred:

"Q. Now these policies are transferred by mere riders or endorsements, are they not? That is, the consent of the insurance company —the Fidelity & Casualty Company, often appears by an endorsement attached to the policy—consent to the transfer of the owner? A. Well, some of the later policies that have been gotten out have a slightly different form and they can be transferred by rider.

"Q. And this one could be transferred by rider, could it not? A. Not in that form; in that case there we would have to have the signature right on the back.

"Q. Well, do you mean to tell the Court that if you got a writing similar to this on a separate piece of paper, and that you turned around and gave the consent to the assignment on a separate piece of paper, that that would not be valid?

"Mr. Ely: I object to his cross-examination of his own witness.

"The Court: I think it is justified. The witness says there is no other way to consent to it except to follow one form.

"Mr. Ely: Note my exception. An exception to the Court's remarks, if the Court please.

"The Court: Go ahead.

"Mr. Ely: There is no showing that the witness is hostile in any way. He has answered the question in the fairest way he can.

"The Court: The witness has stated that is the only way he can endorse it, except on that particular paper. I think he has a right to pursue that. . . . .

"The Court: This witness is a witness in the employ of the defendant's agents and he may be a little reluctant.

"Mr. Ely: Note my exception, if the Court please, to your Honor's statement.

"The Court: That is all right. Take all the exceptions you want in the record. The rule of law is when you put an adverse witness on the stand you can usually elicit the information he is reluctant to give, if he is reluctant."

The above was made the basis of an assignment of error because of comments made by the court and also because attorney for respondent was permitted to cross-examine his own witness.

█ We are of the opinion that the trial court was justified in permitting the attorney to ask leading questions. The record discloses that it was difficult for respondent's attorney to get any information from this witness with reference to the case. He testified that the file on this policy at his office had been destroyed, which was always done after a certain length of time for the purpose of saving office space. The witness did not remember of having received any communication with reference to the policy and seemed to have no knowledge whatever of any fact concerning the policy. He frequently gave evasive answers. Attorney for respondent produced communications with reference to the policy for the purpose of refreshing the witness's memory.

A trial court may, within proper limitations, permit a party to cross-examine his own witness and to ask leading questions. In 70 Corpus Juris, page 524, section 687, we read:

"Notwithstanding the general rule against leading questions, sometimes by reason of express code provisions, the control of such matters is largely within the sound discretion of the trial court. Stated otherwise, the extent to which leading questions may or may not be permitted is primarily subject to the control of the court in the exercise of its sound discretion, which may, in the exercise of such discretion, in criminal as well as in civil cases, allow such questions to be put to a witness when it deems such course necessary or advisable. . . ."

[See, also, Cunningham v. Doe Run Lead Co. (Mo.), 26 S. W. (2d) 957, l. c. 961 (11).] On cross-examination the record discloses this witness was very willing to answer questions on matters that were detrimental to the plaintiff's case. This supported the court's ruling that the witness was reluctant to give testimony in plaintiff's behalf.

While appellant's attorney was cross-examining W. T. Fowler, Jr., the following occurred:

"MR. ELY (Q.): Your request to Lubke & Lubke in this letter of yours of January 26th, 1928, do you know whether that request was ever complied with?

"MR. STRUBINGER: I object to that as being irrelevant and immaterial to any issue in the case.

"THE COURT: Well, if he knows. What request was it?

"MR. ELY: It says we are enclosing Fidelity & Casualty Company endorsement to be attached to owner's and tenant's policy No. 5300327.

"THE COURT: I regard it as wholly immaterial and the objection will be sustained.

"Mr. ELY: Note my exception.

"THE COURT: Whether it is attached to the policy or not—the question is whether it was issued and made and so forth; go ahead.

"Mr. ELY: I except to your Honor's ruling there.

"THE COURT: That is all right. I am ruling on the question; that is all right.

"Mr. ELY: I know, but I except to your Honor's remarks in the ruling. I do it respectfully; I don't believe that—

"THE COURT: Well, you certainly don't expect a case of this kind to turn on whether the paper was pasted to the policy—is that your theory about this policy?"

At this point attorney for appellant moved for a mistrial, which was by the trial court refused.

The trial court's comment that it was wholly immaterial whether the indorsement was attached to the policy was correct as a matter of law. The terms of the policy did not require the indorsement to be physically attached to the policy itself. It required that in order for a transfer to be legal and binding on the company the indorsement should be countersigned by a duly authorized representative of the company. Certainly the company would be estopped to deny liability if it duly consented to and approved in writing a transfer of the policy upon the sole ground that the indorsement had not been attached to the policy but merely kept in the possession of the transferee. In Ferguson v. Home Ins. Co., supra, it was held that an agent of a company could waive the written consent as required by the policy. To the same effect is the holding in Compton Heights v. General Acc., Fire & Life Assur Corp., supra. [See, also, Standard Life & Acc. Ins. Co. v. Bambrick Bros. Const. Co., 143 S. W. 845.]

In the case at bar the doctrine of estoppel need not be invoked. If the company consented in writing to a transfer of the policy, and the indorsement was in possession of a person who had legal right to the possession thereof it certainly would be immaterial whether such person pasted or pinned the indorsement to the policy. The liability of an insurance company, which has received the stipulated premium for the policy, cannot be defeated on such a frivolous contention. An assignment of a liability insurance policy, such as in this case, is a substitution of the purchaser of the property as a party to the contract in place of the vendor. [Ellis v. Insurance Co. of N. A., 32 Fed. 646, 650.] The transfer does not in any way change the provisions of the contract. In view of the issue tried, the evidence offered and the applicable law thereto, we hold that the comments of the trial court did not constitute reversible error. [64 C. J. 95, sec. 99, also p. 101, sec. 105.]

The remaining assignment of error was based on alleged prejudicial statements made by attorney for respondent during his

closing argument of the case to the jury. It will be remembered there was evidence introduced that where a policy of insurance was transferred a copy of the indorsement was attached to a record kept by the company and referred to as a "daily." Appellant did not introduce this record. Blatzer testified that the files on the policy in question in the office of Oscar R. Witte & Company had been destroyed. Respondent's attorney commented on the fact that appellant failed to introduce the daily in evidence and also that files had been destroyed. This, we think, was legitimate argument. It was appellant's contention that the transfer of the policy would not be complete unless a copy of the indorsement had been returned to the company. Under the circumstances it was up to appellant to produce evidence in support of its contention. Appellant's counsel argued to the jury that the transfer was not complete until a copy of the indorsement was returned to the company and attached to the daily, showing ownership of the property had been transferred and the company and the original insurer had agreed to transfer the policy to the new owner. In view of the situation we deem the argument legitimate.

Finding no reversible error, the judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.