**BOSTON & M. R. R. v. COPPELLOTTI.**

**No. 4318.**

Circuit Court of Appeals, First Circuit.

March 30, 1948.

Parker Brownell, of Boston, Mass., for appellant.

Edward S. Farmer, of Boston, Mass. (Harry Finkelstein and Brenda M. Dissel, both of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This action was brought by the administrator of the estate of Peter Coppellotti under the Federal Employers' Liability Act, 35 Stat. 65, amended 53 Stat. 1404, 45 U.S.C.A. §§ 51-60, to recover damages for the death of the plaintiff's intestate for the benefit of his dependents.

There are two counts in the complaint: the first alleges that by reason of the negligence of the defendant the decedent was struck and run over by an engine owned by the defendant, causing the amputation of his right arm from which injury he died; and the second count alleges that the death was caused by the negligent failure of the defendant to inform the decedent of the

danger connected with the place of his employment, which was not obvious, and which the decedent could not reasonably be expected to foresee. Each count contains allegations of pain and suffering undergone by the decedent and of financial loss to his dependents. At the close of the evidence in the trial in the district court the defendant moved for a directed verdict, which motion was taken under advisement by the court and decision reserved. The claim for conscious suffering was waived. The case was submitted to the jury. A verdict for the plaintiff was returned on each count, but damages in the sum of $3600 were assessed only on the second count. The motion for a directed verdict was denied, a general verdict recorded and judgment entered for the plaintiff. The defendant has appealed.

At the trial there was no conflict of evidence. The defendant called only one witness whose testimony was concerned only with the question of dependency of the decedent's next of kin. The plaintiff put on several witnesses who described the circumstances surrounding the accident. Their testimony may be briefly summarized as follows:

About 25 or 27 years before the date of his death, the decedent had worked for the defendant railroad. Since then he had been employed in the building trades and trucking business, and by other railroads. He was a sober, healthy, experienced man and was considered a good workman. On August 20, 1946, the day before the accident, he was again hired by the defendant and went to work the next morning in a crew with three other men under a foreman. The work consisted of relaying with new rails a five mile section of the eastbound main line between East Fitchburg and Ayer, Massachusetts. Five extra crews and the regular employees, about 100 men in all, were working in an area stretching out a distance of about one-half mile along the track. Where the work was going on all traffic east and west was routed over the westbound track. At the time of the accident, the decedent's crew was working at a point about 400 feet on the Boston or east side of a highway bridge known as Lunen-burg Bridge and moving eastward. The decedent's particular work was described as running out anchors, which are pieces of iron placed under the rail next to the ties to keep the rail from creeping in one direction. The foreman had given the decedent instructions as to this kind of work, which is the last operation in relaying a rail. It was not unusual for workmen to leave their work to relieve themselves or to rest in the shade on a steep hill, the base of which was about five feet from the eastbound track on the left side going west of the bridge. To go up this hill, which was over 200 feet west of the bridge, it was necessary to cross the eastbound track which was being repaired. On the opposite side of the westbound track there was another hill but it was not as wooded as the first hill and not used by the men because of swampy land there. The foreman testified that about an hour before the accident he saw the decedent who was about 400 feet ahead of him turn around, walk west past him and under the bridge. He did not see the decedent after that because of a curve in the track which obstructed his vision.

A pilot conductor had charge of both ends of the railroad under repair and it was his duty to give instructions through a dispatcher as to the order of precedence of trains moving east and west to avoid a collision between trains. Four trains in one direction and five in the other had gone over the westbound track on the day of the accident before the accident happened.

In the afternoon, about twenty minutes before the accident, a freight train had gone through moving eastward. A regularly scheduled train coming from Bellows Falls, Vermont, and going eastward toward Boston was then signalled to proceed over the westerly track. The pilot conductor who followed the train in a handcar came up behind the train after it had stopped but he did not see it stop. He alighted from the track car, went forward and saw the decedent lying between the rails of the westbound track about 800 or 900 feet west of the bridge and a little ahead of the engine. The decedent's right arm was almost completely severed. He was taken to a hospital where he died at about 6:25 that evening.

Defendant's answers to interrogatories propounded by the plaintiff were also read to the jury. In answer to the question how was the decedent fatally injured, the reply was that: "Peter Coppellotti while lying on track was run over by front of engine."

The defendant in this court maintains that there was no evidence to support a finding of negligence and proximate causation on either of the two counts, and also that there was no evidence of dependency by the next of kin. In regard to dependency, we find ample evidence to justify the jury's finding that the decedent's sister was dependent upon him. He contributed from $5 to $15 a week for her support. The only other certain income she had was a pension of $42 a month received by her husband. One of her sons also contributed to the support of the household at times. A jury could on the evidence presented find that the sister was dependent on her brother.

But in regard to negligence and causation a different situation arises. A laborer is working in an area where approximately 100 other men are working. All traffic is being routed over one track. A pilot conductor is in charge to see that collisions do not occur. The laborer wanders out of sight. A regular scheduled train comes through. We are not told how fast it is going, whether its bell or whistle is sounded; whether the engineer—experienced and familiar with the area—sees the decedent or not. We are told only that the decedent while lying on the track is run over. How the decedent got there and how long he had been there is left to conjecture. For reasons best known to the parties, the engineer was not put on the stand.

On the basis of this meager evidence, we are asked to sustain a jury finding for the plaintiff. Yet the Supreme Court has said that the burden is on the plaintiff to present probative facts from which negligence and casual relation could reasonably be inferred; that the essential requirement is that mere speculation not be allowed to do duty for probative facts, after making allowance for all reasonable possible inferences favoring the party whose case is attacked. See Myers v. Reading Co., 1947, 331 U.S. 477, 485, 67 S.Ct. 1334; Tennant v. Peoria & P. U. Ry., 1944, 321 U.S. 29, 32, 64 S.Ct. 409, 88 L.Ed 520.

Are there any probative facts here to indicate either negligence or causal relationship? One count is based on the theory that the railroad was derelict in not warning the decedent of the dangers from passing trains and notifying him when they would pass. From the time the decedent started work in the morning until the time of the fatal accident, nine or ten trains passed by, about half going east, the other half west. It was evident that trains were proceeding in both directions on the track at frequent intervals. Surely no adult need be warned that he can not safely stay in the path of a moving train. Even if it be said that the jury could find that the failure to warn the decedent that the track was being used by trains proceeding in both directions and the failure to notify him of the train schedules was negligence, there are no facts from which it can be inferred that failure so to warn was the proximate cause of the accident. If we were to accept one theory of the accident suggested by the plaintiff, that the decedent while coming down the hill fell upon the track, the failure to warn of the passage of trains could not have been the cause of the accident. In short, there is no basis for any inference that the failure to warn was in any way responsible for the accident. In fact all the evidence indicates that the decedent was undoubtedly aware that all traffic was routed over the westbound track, and that the traffic was fairly heavy.

The other count is predicated upon the acts of the engineer. The difficulty here is that there is no testimony as to any acts of the engineer. We do not know the speed of the train; whether the engineer was watching the track or not; whether he sounded any warning; whether he ever saw the decedent. There is no evidence to support an inference that the decedent was on the track in the path of the locomotive a long enough time before the accident to give the engineer an opportunity to take action to avoid running over him. We are told that the fact that the decedent while

lying on the track is run over at a place just before an area where a large group of men is working is enough to support a jury's finding of negligence on the part of the engineer resulting in death to the decedent. Even if it could be said that such an accident is an extraordinary occurrence which does not usually occur in the absence of negligence, there is no basis for a jury's finding that it was some act of the defendant rather than of the decedent that caused the accident. There is no evidence—either circumstantial or direct—from which negligence of the defendant can be reasonably inferred.

 We are fully aware of the respect that must be paid to the findings of the jury in negligence cases. See Bailey v. Central Vermont Ry., 1943, 319 U.S. 350, 353, 354, 63 S.Ct. 1062, 87 L.Ed. 1444. The focal point of judicial review is the reasonableness of inference of the jury. See Tennant v. Peoria & P. U. Ry., supra, 321 U.S. at page 35, 64 S.Ct. at page 412. But here we can not find any reasonable basis to support the verdict. The plaintiff has completely failed to make out a case. Where negligence is the basis of the action, we have no choice but to apply the negligence test as it has been laid down by the Supreme Court. And in so doing we can not find evidence sufficient to support the verdict here. Cf. Fantini v. Reading Co., 3 Cir., 1945, 147 F.2d 543, certiorari denied, 1945, 325 U.S. 856, 65 S.Ct. 1185, 89 L.Ed. 1976; Cowdrick v. Pennsylvania R. R., 1944, 132 N.J.L. 131, 39 A.2d 98, certiorari denied, 1945, 323 U.S. 799, 65 S.Ct. 555, 89 L.Ed. 637.

 The trial judge is better qualified than the appellate court to determine whether a new trial should be granted or judgment notwithstanding the verdict entered. Here the trial judge might deem it advisable to order a new trial so that there would be an opportunity to call the engineer of the train, the one person who could shed additional light on how the accident occurred and whose testimony might indicate whether or not the railroad was negligent. Whether a new trial should be ordered or a judgment directed for the defendant should be decided by the judge who conducted the trial. Cf. Globe Liquor Co.

v. San Roman, 1948, 332 U.S. 571, 68 S.Ct. 246; Cone v. West Virginia Paper Co., 1947, 330 U.S. 212, 67 S.Ct. 752.

The judgment of the district court is vacated and the case is remanded to that court for further proceedings not inconsistent with this opinion.