Harry DUNN, Respondent,

v.

TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, Appellant.

No. 44470.

Supreme Court of Missouri.
Division No. 2.

Jan. 9, 1956.

Warner Fuller, Arnot L. Sheppard, St. Louis, for appellant.

Mortimer A. Rosecan, Max C. Nelson, Charles E. Gray, St. Louis, for plaintiff-respondent.

STOCKARD, Commissioner.

Plaintiff brought this action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. to recover for personal injuries sustained on September 5, 1952 while employed by defendant. The jury returned a verdict for $20,000 and judgment was entered for that amount. Defendant has appealed and, among other things, contends that plaintiff failed to make a submissible case. The parties will be referred to as in the trial court.

Plaintiff was foreman of a crew of men known as mail and baggage handlers. The duties of the crew consisted of loading and unloading mail and baggage from both inbound and outbound trains at the Union Station, St. Louis, Missouri. At the time of the injury plaintiff's crew was working on a platform between tracks 30 and 31 and was unloading mail from a train on track 31. Several "bull wagons" on which the mail was to be loaded had been "spotted" along the side of the platform next to track 31. These wagons are constructed of steel except for a wood floor. At the front of each wagon is a counterbalanced steel tongue, and at the free end of the tongue is a ring. At the back of each wagon is a hitch. A number of wagons may be coupled together by connecting the ring on the tongue of one wagon to the hitch of another wagon and then the wagons may be pulled by a single tractor. Each wagon, when empty, weighs approximately eleven hundred pounds.

In order to complete the unloading of mail, plaintiff needed two additional wagons. According to the testimony of plaintiff, he saw a tractor approaching pulling four empty wagons, and he stepped in front of the tractor and told the operator that he wanted two of the wagons. The operator came to a complete stop, and while the tractor remained stopped plaintiff walked along the side of and past the tractor and the first two wagons to a point opposite the opening between the second and third wagons. Plaintiff then stepped between the two wagons to unhitch them and at that moment the operator started the tractor forward. Plaintiff thought the wagons were moving because the floor was sloping. He walked sideways six or eight steps as the wagons moved forward slowly and he grabbed the pin in the coupling, wiggled it, and pulled it out. Because of the counterbalance the free end of the tongue on the third bull wagon raised up, the operator suddenly stopped the tractor, and the two rear wagons continued to roll forward by reason of their momentum. Plaintiff was injured when caught between the second and third wagons.

Defendant does not agree that the accident happened in the manner contended by plaintiff. According to its evidence plaintiff shouted to the tractor operator that he wanted "some of them wagons." The operator did not then stop because he expected the arrival of a train on track 30 and he was on the wrong side of a "safety line." He therefore continued to move the tractor with the four wagons hitched behind it in order to get across the "safety line." However, without the knowledge

of the operator, plaintiff stepped in between the second and third wagons while they were moving and pulled the pin and thereby released the last two wagons. When the operator looked back to see if the train was arriving on track 30 he saw plaintiff between the second and third wagons, and believing plaintiff to be in a position of danger and not knowing that plaintiff had released the last two wagons, he immediately stopped. The injury to plaintiff then occurred as above set out.

 This cause is governed by the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq., and, "in interpreting the act and determining this appeal, it is the duty of this court to apply the test of liability as it has been laid down and determined by the Supreme Court of the United States. Boston & M. R. R. v. Coppellotti, 1 Cir., 167 F.2d 201, 204. And the test of liability under the act is *negligence* which that court has defined 'as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done.' Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 67, 63 S.Ct. 444, 451, 87 L.Ed. 610, 617." Winters v. Terminal R. Ass'n of St. Louis, 363 Mo. 606, 252 S.W.2d 380, 383.

Defendant contends that plaintiff did not make a submissible case because he did not show that the tractor operator had knowledge, express or implied, of plaintiff's presence between the wagons, and he did not show that the tractor operator saw plaintiff in a position of danger until the moment before he stopped the movement of the trucks. The substance of this contention is that there was no evidence that the tractor operator was negligent.

 In determining whether plaintiff presented a submissible case, the evidence together with all reasonable inferences, must be considered in its light most favorable to plaintiff, and defendant's evidence disregarded unless it aids plaintiff's case.

Plaintiff's verdict-directing instruction hypothesized the factual situation shown by his evidence and submitted the question of defendant's liability upon the single specification of negligence that when plaintiff stepped in between the second and third wagons for the purpose of unhitching them, the tractor operator "did then start up said string of trucks (wagons) in motion while plaintiff was in between said trucks, and * * * did then suddenly and without warning stop said string of trucks."

 The employees of defendant were under a duty not to endanger heedlessly one another, and the circumstances of the occurrence as shown by the evidence favorable to plaintiff support the inference of negligent injury. The jury could find that the operator knew or should have known that the plaintiff intended to unhitch the last two wagons. Under these circumstances the jury could also find that the operator was negligent in starting and stopping the tractor without first determining if plaintiff was between the two wagons. Whether the accident occurred in the manner contended by plaintiff, and whether the starting and the stopping of the tractor under the circumstances shown by plaintiff's evidence constituted negligence were issues properly submitted to the jury. Where there is a reasonable basis in the record, as there is in this case, to support an inference by the jury that injury resulted from defendant's negligence, in an action under the Federal Employers' Liability Act, an appellate court may not weigh conflicting evidence and arrive at a different conclusion. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Schonlau v. Terminal R. Ass'n of St. Louis, 357 Mo. 1108, 212 S.W.2d 420.

Defendant contends that prejudicial error resulted from certain comments by and during oral argument of plaintiff's counsel. We shall not attempt to set out in detail all the matters of which complaint is made. To do so would extend this opinion unnecessarily.

Plaintiff testified on direct examination that "A man named Hardaway, who is claim agent for the Terminal Railroad, * * * took them (the pictures) with us." On cross-examination the following occurred:

"By Mr. Sheppard: Q. And he (Hardaway) did not pick out the place to pull the trucks, did he? A. No, sir.

"Q. And he did not pick out the place to put you (plaintiff) in between the trucks? A. No, sir.

"Q. What you mean is he was courteous enough to help you when you showed him where to place the trucks?

"By Mr. Rosecan: I object to that, if your Honor please, as calling for a conclusion, as to whether or not Mr. Hardaway was courteous.

"By the Court: The objection will be sustained. . . .

"By Mr. Rosecan: And ask that it be stricken.

"By the Court: That may be stricken. Strike the word courteous.

"By Mr. Sheppard: Well, good or kind.

"Q. Was he kind enough to help you?

"By Mr. Rosecan: I object to his kindness. I never knew a railroad claim agent who was kind or courteous, and I object to the use of the word."

Defendant objected to the comment of plaintiff's counsel and asked for a mistrial. The court did not specifically rule on the objection or the request, but said "proceed" after asking some questions of the witness.

██ It is highly improper for counsel, acting in bad faith, to make statements before the jury merely to prejudice his opponent's case, 88 C.J.S., Trial, § 162b, and it is difficult to conceive for what other purpose the statement was made. Plaintiff contends that the "matter was opened up" by the defendant, and that defendant is not entitled to complain of "any rebuttal" made by plaintiff's counsel. But defendant is not estopped to complain of improper comment which revives the original subject forbidden the jury's consideration.

On cross-examination John McNally, a witness for defendant, was asked if plaintiff told him to tell the truth concerning the occurrence of the accident, and he replied that he did. He was also asked if he had given a statement to Hardaway, a claim agent for defendant, before he talked to plaintiff, and he replied that he had. Counsel for defendant then asked: "Did Mr. Hardaway ask you to tell anything but the truth?" The following then occurred:

"By Mr. Rosecan: I object to that as self-serving, your Honor.

"By Mr. Sheppard: In view of counsel's examination, your Honor, I think I have a right to ask that question.

"By the Court: He may answer. A. He told me to tell the truth and nothing else but the truth.

"By Mr. Sheppard: That is all.

"By Mr. Rosecan: He told you that. You are sure about that?

"By Mr. Sheppard: I object to counsel's smiling and sneering at the witness; and I ask the Court to declare a mistrial, because of the improper conduct of counsel.

"By Mr. Rosecan: Well, this is preposterous. I have to smile. I still have a sense of humor."

An objection and a request for a mistrial were both overruled. The charge made by defendant's counsel was serious, but instead of a denial, counsel for the plaintiff, by implication at least, admitted that the charge was not entirely without foundation.

Counsel for plaintiff made an opening statement, but counsel for the defendant reserved its statement. During oral argument to the jury the following occurred:

"By Mr. Rosecan: * * * You can see the defense in this case. I did not know

what the defense was going to be. We were not even given the courtesy of an opening statement.

"By Mr. Sheppard: Your Honor, I object to that as highly unfair. We can make an opening statement or not, exactly as we see fit.

"By the Court: No; it is not obligatory.

"By Mr. Rosecan: Well, you did not make an opening statement; and I did not know what the defense was going to be.

"By Mr. Sheppard: I still object, if your Honor please.

"By the Court: The objection is *sustained*.

"By Mr. Rosecan: I did not know what the defense was going to be until after their parade of Terminal employees on the witness stand here.

"By Mr. Sheppard: I object to that. There is no basis for it; and it is not a fact, and counsel knows it.

"By Mr. Rosecan: I did not know what the defense was going to be until I heard it from the witness stand. I was never told, and as no opening statement was made, I had no means of knowing.

"By Mr. Sheppard: If your Honor please, I object to counsel continuing this line of argument after the court has sustained my objection.

"By the Court: It is not obligatory for either side to make an opening statement. Plaintiff's counsel makes an opening statement, and defendant's counsel reserves his statement, or makes it as he sees fit. Defendant's counsel was within his rights in reserving his opening statement.

"By Mr. Rosecan: If he did not want to make one, it is all right with me.

"By the Court: It does not call for comment."

Counsel attempts to justify this conduct by pointing out that the trial court sustained the objections, but he twice repeated the improper comment after the court had ruled and then concluded with an unnecessary and somewhat impudent remark. It is apparent that counsel was attempting improperly to create the impression with the jury, in an effort to obtain sympathy, that he had been placed at a disadvantage.

■ Appellant also complains of certain comments of plaintiff's counsel concerning a so-called statement. Three days after the injury, defendant's claim agent Hardaway, accompanied by a shorthand reporter, asked plaintiff questions concerning the circumstances of the accident. The questions and answers were taken down in shorthand by the reporter. Defendant called the reporter as a witness, and after establishing that he was present at the interview between Hardaway and plaintiff, asked if he had with him his original notes taken at the interview. Defendant's counsel had in his hand a typewritten copy of the interview, and plaintiff's counsel, referring to the typewritten copy, in the presence of the jury, said, "May I have a copy of that?" This typewritten copy at that time had not been shown to the witness and had not been used in any way except as a memorandum from defendant's file. At this stage of the proceeding, plaintiff's counsel was not entitled to receive a transcribed copy of the interview. Higgins v. Terminal R. Ass'n of St. Louis, 362 Mo.App. 264, 241 S.W.2d 380. Defendant did not comply with the request, but it registered no objection. It now contends that it was prejudiced by the fact the request was made, and that to object would have increased the prejudicial effect by firmly implanting in the minds of the jurors that it was attempting to conceal something they were entitled to see. Plaintiff's counsel was undoubtedly aware of the impropriety of his remark in view of the ruling in McGinley v. St. Louis Public Service Co., Mo.Sup., 239 S.W.2d 321, where this court held similar conduct of the same counsel to be improper in a comparable situation.

After considerable discussion concerning the admissibility of the statements made by plaintiff to Hardaway as shown by the shorthand reporter's notes, the court ruled

that it would not permit any of the statements to be introduced in evidence. Defendant then announced that it desired to make an offer of proof. A recess was taken and counsel retired to the Court's Chambers. Defendant's counsel read aloud some of the statements of plaintiff made during the interview with Hardaway, and plaintiff's counsel withdrew his objections to certain of the statements and agreed that they could be read to the jury. This was done when the trial was reconvened. Other statements to which plaintiff objected were not read. Plaintiff then cross-examined the shorthand reporter but did not ask him if there was anything in his notes that tended to explain the statements read to the jury by agreement, and at no time did he ask to be permitted to examine the typewritten transcript for the purpose of determining if it contained explanatory statements. However, in plaintiff's closing argument to the jury, reference was made to the typewritten copy of the interview (referred to as a statement) in the following manner:

"By Mr. Rosecan: What did they do with the statement? I have never seen that statement.

"By Mr. Sheppard: I object to that statement of counsel. There is no reason why he should have seen the statement.

"By Mr. Rosecan: He did not invite me to be present.

"By Mr. Sheppard: I am making the objection.

"By the Court: Let us confine the argument to the testimony coming from the witness stand. Extraneous matters should not be brought in.

"By Mr. Rosecan: That is not extraneous. There is an eleven-page statement from this man. That is in the record.

"By Mr. Sheppard: Counsel is proceeding with his improper argument despite your Honor's ruling. And I again ask that counsel be rebuked for not staying within the Court's ruling.

"By the Court: Yes. When I make a ruling I expect it to be followed.

"By Mr. Rosecan: I am not doing that. I always abide by the Court's ruling.

"By the Court: You will confine all argument to the testimony as presented here to this jury; that is what is going to influence them.

"By Mr. Rosecan: If I am misquoting this record at all I would like to be corrected, but I think the testimony is clear that the statement consisted of ten and a half typewritten pages.

"By the Court: Come up here, gentlemen.

"(Counsel for plaintiff and counsel for defendant have discussion with Court out of the hearing of the jury and off the record.)

"By Mr. Rosecan: I do not understand your Honor's ruling, and I do not want to violate it.

"By the Court: I do not want any argument given to this jury on any facts that were not presented from the witness stand. Now, that is easy enough.

"By Mr. Rosecan: I want to argue about the nature of the statement.

"By the Court: You cannot do that. You had an opportunity to put your man on the stand and deny the statement, and you did not see fit to do that. Confine yourself to the evidence.

"By Mr. Rosecan: All right. Now, ladies and gentlemen, I think you saw the way the statement was put into evidence. It was done by reading a question and answer here and there. You heard the reference to a certain page, and he would read a question and answer out of one page.

"By Mr. Sheppard: No.

"Now, your Honor, I object to that unfair argument. * * *

"By Mr. Rosecan: I do not know what the rest of the statement was. The rest of it might be in explanation.

"By the Court: Now, Mr. Rosecan, there is a rule of evidence that controls this matters. I do not want to engage in any argu-

ment with counsel. I am not a party to this suit. I am supposed to be the arbitrator here, to rule on the objections made, and to see that the rules of practice are conformed to by both sides. You do not need to comment to the jury on evidence that the Court has sustained objections to that is according to the rules of practice.

"By Mr. Rosecan: I just want to make one statement for the record.

"By Mr. Sheppard: Let's make it up here. You want to have everything in evidence.

"By Mr. Rosecan: The whole statement was never read to me. The only part of that statement that was read was the part that he offered in evidence; and he singled out questions and answers, and I withdrew objections to that on the ground that they may be construed as admissions against interest.

"By the Court: Yes. That is in the record. On the first offer of that statement I sustained your objection that it could not be used. And you then came into chambers and after discussion you withdrew your objection.

"By Mr. Rosecan: Just to the offer of proof, your Honor. He changed his whole method of procedure and wanted to make an offer of proof of certain parts of it.

"By Mr. Sheppard: No. I did not change anything at all. My method of procedure was proper.

"By Mr. Rosecan: You changed it to offering only certain parts.

"By the Court: You waived your objection in chambers and you cannot come out here in open court and then make objections to the matters to which you had waived objection in chambers.

"By Mr. Rosecan: I am not objecting to it.

"By the Court: You are commenting on it and it is not in evidence. That is not proper. Your argument is to refute any testimony that occurred in the courtroom.

"By Mr. Rosecan: It was admitted that the statement is ten or eleven typewritten pages.

"By the Court: That was to identify the paper.

"By Mr. Rosecan: There was a lot of it that has not been read and I do not know what that is.

"By the Court: Therefore, it is not before the Court and should not be called to the attention of the jury.

"By Mr. Sheppard: Now, let me move right now for a mistrial, because of the various highly prejudicial remarks made, and the refusal of counsel for plaintiff to submit to the rulings of the Court.

"By the Court: Motion overruled. Proceed, Mr. Rosecan."

In spite of the above occurrence and the rulings of the court, counsel for plaintiff did not argue a sufficient time to complete one page in the transcript until he again commented to the jury that the statement was eleven pages in length "and they come in here and read parts of it." An objection and a request for a mistrial were again overruled and counsel directed to "proceed."

 Lengthy colloquy between the attorneys and the trial court within the hearing of the jury is not commendable for the reason that during such colloquy comments are likely to be made which have an improper influence on the minds of the jurors. Whether or not reversible error resulted depends upon the nature of the comments and the circumstances in which they were made. McNeill v. Fidelity & Casualty Co. of New York, 336 Mo. 1142, 82 S.W.2d 582. It was improper for plaintiff's counsel under the circumstances, to comment to the jury that he had not seen the statement, that he was not invited to be present when the interview was had (no suit had then been filed and plaintiff had not employed counsel), that the statement was 10½ or 11 pages in length and only a part had been read to the jury, that he did not know what the "rest of the statement was,"

and that the parts not read might be explanatory of the parts read by agreement. In our opinion the jury could not have heard these comments made in defiance of the court's rulings without having reasonable grounds to believe that those parts of the statements not in evidence contained matters adverse to defendant and favorable to plaintiff, and that defendant had improperly kept the information from them. Of course, the comment subsequent to the above quoted colloquy that defendant had read only parts of the statement to the jury was inexcusable.

Plaintiff's counsel commented on the merits of the defense and then said: "Well, I have got faith in the intelligence of an American jury. I don't think you are going to bite into that kind of a rotten apple that the Terminal Railroad is trying to palm off on you here, and I believe it to be an awful rotten, wormy, diseased apple, that offends every sense of decency and justice and fair play that any fair minded American will always have in his heart and his conscience."

An objection was made to this statement and defendant moved for a mistrial. The court overruled the motion, but made no ruling on the objection and said "proceed."

 It is unmistakably clear that counsel by his argument was saying to the jury that the merits of the defense should be compared to an "awful rotten, wormy, diseased apple" and that defendant by use of unethical tactics was attempting to get it to believe its version of how the accident occurred. The term "palm off" necessarily carries this implication. Of course, there was no evidence to support such an implication. We are compelled to conclude that this argument of plaintiff's counsel could have had no other purpose, and could have served no other purpose, than to arouse and inflame the jury with a feeling of hostility toward the defendant. We feel compelled to comment that the same counsel used substantially the same language, but not quite so derogatory, in his oral argument in Baker v. St. Louis Public Service Co., Mo.Sup., 269 S.W.2d 78. That case was reversed because of improper comments in the opening statement and in oral argument.

 The question of negligence in this case was close, and the verdict of the jury was signed by only nine members. When we consider the matters above set out, the circumstances under which they occurred, the rulings of the court (or in some cases the lack of rulings) and when we also take into consideration that the action of the court in stating "proceed" without ruling on an objection was "tantamount to overruling the objection and stamping the conduct of plaintiff's counsel as proper", Ryan v. Sheffield Car & Equipment Co., Mo. App., 24 S.W.2d 166, 170, we cannot avoid the conclusion that defendant could not have had that fair, impartial, and dispassionate consideration by the jury uninfluenced by improper argument to which it was entitled.

Plaintiff cites numerous cases to the effect that counsel is permitted wide latitude in argument, and with that general proposition we agree. We need not analyze the arguments in the cited cases. We have examined them and consider them not to be authorities to justify the argument in this case. We repeat what was said in Dodd v. Missouri-Kansas-Texas R. Co., 353 Mo. 799, 184 S.W.2d 454, and again in Wood v. St. Louis Public Service Co., 362 Mo. 1103, 246 S.W.2d 807: "This is not to place counsel in a 'straight jacket' (Paul v. Dunham, Mo.App., 214 S.W. 263) nor ban 'oratorical conceit or flourish.' Bishop v. Brittain Inv. Co., 229 Mo. 699, 129 S.W. 668, 680, Ann. Cas.1912A, 868. But the argument in the instant case cannot be classified as mere 'oratorical conceit or flourish' and it does not come within the limitations of acceptable and proper argument which we have no intention of modifying. Evans v. Town of Trenton, 112 Mo. 390, 399, 400, 20 S.W. 614, 616; Hancock v. Kansas City Terminal R. Co., 339 Mo. 1237, 100 S.W.2d 570. * * The trial judge is permitted some discretion in restraining argument and in passing on its effect when he rules on a motion for a new trial. Aly v. Terminal R. Ass'n of St. Louis, 342 Mo. 1116, 119 S.W.2d 363. But

even so when argument is improper and especially when it is inflammatory the trial court should take the proper and necessary action to insure the removal of its prejudicial effect. Rytersky v. O'Brine, 335 Mo. 22, 70 S.W.2d 538; Carpenter v. Kurn, 345 Mo. 877, 136 S.W.2d 997; Monroe v. Chicago & A. R. Co., supra [297 Mo. 633, 249 S.W. 644, 257 N.W. 469]." 184 S.W.2d 458.

Our conclusion that this case must be reversed and remanded makes it unnecessary to consider the other assignments of error. In the event of a new trial each side will have the benefit of the criticisms directed against the instructions and can be guided accordingly.

The judgment is reversed and the cause remanded.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.